**UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | |
|---|---|
| **NXP B.V.,** | |
|     **Plaintiff,** | |
| | **CASE NO. 6:12-cv-498-ACC-TBS** |
| **RESEARCH IN MOTION, LTD and RESEARCH IN MOTION CORP.,** | |
|     **Defendants.** | |

**<u>NXP B.V.'S OPPOSITION TO DEFENDANTS' MOTION TO TRANSFER
TO THE NORTHERN DISTRICT OF TEXAS</u>**

# TABLE OF CONTENTS

PAGE NO.

I.   Introduction ........................................................................................................... 1

II.   Background ............................................................................................................ 2

    A.   The Parties and Asserted Patents. ............................................................. 2

    B.   RIM's actions confirm that this District is appropriate and convenient, both for the parties, and also for third parties. ........................................... 4

III.   Legal Standard ...................................................................................................... 6

IV.   Analysis ................................................................................................................. 8

    A.   RIM improperly seeks to import precedent applied in other Circuits, and fails to account for its acquiescence and delay. ................................... 8

    B.   Suppositions, guesses, and half-truths cannot satisfy RIM's evidentiary burden to show that a transfer is warranted. ............................................ 9

        1.   RIM posits that the relevant locations of its third-party suppliers are in Texas; publicly accessible records reveal otherwise. ................................................................................... 11

        2.   RIM misrepresents or ignores the parties' contentions and the breadth of the accused products. ................................................. 13

    C.   Weighing all factors, transfer is not warranted. ...................................... 13

        1.   The convenience of the witnesses. .............................................. 13

        2.   The location of relevant documents and the relative ease of access to sources of proof. ........................................................ 14

        3.   The convenience of the parties. .................................................. 15

        4.   The locus of operative facts. ...................................................... 16

        5.   The availability of process to compel the attendance of unwilling witnesses. ................................................................ 17

        6.   The relative means of the parties. .............................................. 18

        7.   The forum's familiarity with the governing law. ....................... 18

        8.   The weight accorded a plaintiff's choice of forum. .................... 18

        9.   Trial efficiency and the interests of justice, based on the totality of the circumstances. ................................................................ 19

V.   Conclusion .......................................................................................................... 20

# TABLE OF AUTHORITIES

PAGE NO.

**Cases**

*Baragona v. Kuwait Gulf Link Transp. Co.*,
   594 F.3d 852 (11th Cir. 2010) ........................................................................ 8

*England v. ITT Thompson Indus., Inc.*,
   856 F.2d 1518 (11th Cir. 1988) ...................................................................... 6

*FTC v. Direct Benefits Group, LLC*,
   No. 6:11-cv-1186, 2012 U.S. Dist. LEXIS 121906 (M.D. Fla. Aug. 7, 2012)................... 14

*Garay v. BRK Electronics*,
   755 F. Supp. 1010 (M.D. Fla. 1991)............................................................... 10

*Howell v. Tanner*,
   650 F.2d 610 (5th Cir. 1981) ........................................................................ 7

*In re Ricoh Corp.*,
   870 F.2d 570 (11th Cir. 1989) ...................................................................... 6

*In re TS Tech USA Corp.*,
   551 F.3d 1315 (Fed. Cir. 2008) ..................................................................... 6

*Manuel v. Convergys Corp.*,
   430 F.3d 1132 (11th Cir. 2005) ................................................................. 7, 8

*Mason v. Smithkline Beecham Clinical Labs.*,
   146 F. Supp. 2d 1355 (S.D. Fla. 2001) ......................................................... 14

*Omega Patents, LLC v. Lear Corp.*,
   No. 6:07-cv-1422 (M.D. Fla. May 27, 2009) ................................................. 8, 18

*Operating Systems Solutions, LLC v. Apple, Inc.*,
   No. 8:11-cv-1754 (M.D. Fla. Jan. 30, 2011) ................................................. 7, 18

*Perlman v. Delisfort-Theodule*,
   451 Fed. Appx. 846 (11th Cir. 2012)........................................................... 8, 9

*Robinson v. Giamarco & Bill, P.C.*,
   74 F.3d 253 (11th Cir. 1996) ................................................................... 7, 8

*SEC v. Lauer,*
 No. 09-15138, 2012 U.S. App. LEXIS 7889 (11th Cir. 2012) ............................................ 8

*Sterling v. Provident Life and Accident Insurance Co.,*
 519 F. Supp. 2d 1195 (M.D. Fla. 2007) ................................................................................. 7

*Suomen Colorize Oy v. Dish Network LLC,*
 801 F. Supp. 2d 1334 (M.D. Fla. 2011) ................................................................................. 7

Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc.,
 761 F. Supp. 2d 1322 (M.D. Fla. 2010) ................................................................... 7, 8, 14, 15

*Zurich Am. Ins. Co. v. Renasant Ins. Co.,*
 No. 8:10-CV-1769, 2011 U.S. Dist. LEXIS 17641 (M.D. Fla. Feb. 23, 2011) .................. 15

**Statutes**
28 U.S.C. § 1404(a) ...................................................................................................................... 6

## I.      Introduction

Each year, for the past seven years, the RIM defendants have selected this forum —

Orlando, Florida — to host their annual worldwide conference, now dubbed BlackBerry

World.  Not only has Orlando been RIM's exclusive choice for the annual conference since

2004, RIM will also return to Orlando in May 2013.  Thorsten Heins, RIM's current

President & CEO, boasted in his 2012 keynote address that in-person attendance included

individuals from over 115 countries.  At the 2012 conference, at least 64 employees (in

addition to four top executives) were scheduled as event speakers, on top of the RIM

engineers, developers, and technical experts that RIM promised would be in attendance.

Simply put, each year RIM uproots a substantial share of its employee and executive base

from their homes and offices in Canada, Texas, and throughout the world, and sends them to

spend several days in Orlando.  RIM also expects thousands of other members of the

"BlackBerry ecosystem" to do the same (5,500 attendees, according to RIM).  Moreover,

many of RIM's infringing products and features have been introduced to the U.S. and world

markets and demonstrated by RIM at these annual conferences.  RIM's repeated selection of

Orlando for its annual conference confirms that this forum is convenient for RIM, and for

other interested parties across the U.S. and around the globe.

As the party seeking transfer, RIM exclusively bears the burden of showing that a

trial in its requested venue is clearly more convenient than this District.  RIM fails to satisfy

its burden.  As an initial matter, RIM's request should fall on deaf ears, coming five months

after the Complaint was filed — and after the parties met ***in person in this District*** to discuss

and agree upon case management issues, deadlines, and pre-trial procedures.  Setting aside

RIM's prior acquiescence to a trial in this District, RIM presents the Court with speculations and half-truths rather than the proof necessary to demonstrate that a transfer is appropriate. Speculation is insufficient to satisfy RIM's burden, and much of RIM's speculation is incorrect.  RIM's Motion is notable because it fails to name a single third-party witness, witness location, or evidence of what is actually more convenient for any third party.  That absence is telling given that RIM's "likely" third parties are its own suppliers and business partners with whom RIM has an established business relationship.

NXP B.V. respectfully requests that the Court deny RIM's Motion.

## II.     Background

### A.     The Parties and Asserted Patents.

Plaintiff NXP B.V., the owner of each of the patents-in-suit, is a Dutch corporation based in Eindhoven, The Netherlands.   NXP B.V. (and the NXP family of companies) formed in 2006 as a spin-out from Royal Philips, which was also based in The Netherlands. NXP B.V.'s United States subsidiary, NXP Semiconductors USA, Inc. ("NXP USA"), is based in San Jose, California, but that subsidiary is not a party to this action, and no inventor of any asserted patent is presently employed by NXP USA or any other NXP entity.

Research in Motion Ltd. ("RIM Canada") is headquartered in Waterloo, Ontario, Canada, and is the parent corporation in charge of all RIM entities worldwide (with numerous locations on every continent).  Research in Motion Corp. is RIM's American subsidiary; there are 21 RIM locations in the United States, including in Sunrise (Fort

Lauderdale), Florida.[1]  RIM's Florida office is not a mere sales office, but occupies two

physical locations, and includes research and development staff and software architects.[2]

NXP B.V. asserts that RIM's smartphone and tablet devices infringe six U.S. Patents

which span an array of technologies, issued to inventors throughout the world.  These

technologies include a GPS receiver in a smartphone that is arranged to power up in response

to a user's selection of a website (a power saving feature).[3]  Another patent involves wireless

networking, and the expansion of allowable data transmission rates in a novel way that

promotes backward compatibility (including 802.11g Wi-Fi wireless networking).[4]  Another

patent addresses a variable-width system bus, such as for transferring data between a

processor and a memory device.[5]  Three patents address the design and use of various layers,

design rules, and fill techniques to improve the design and fabrication of integrated circuits

used in the RIM phones.[6]

The asserted patents implicate a wide array of RIM's smartphone and tablet products,

including models from the BlackBerry Bold, Torch, Storm, Touch, Pearl, Curve, and Style

---

[1] *See* RIM Location Maps (Ex. 1) to the Declaration of Cliff Win.  All lettered exhibits are attached to the Win Decl. unless otherwise indicated.

[2] *See, e.g.*, RIM Florida Job Postings (Ex. 2).

[3] U.S. Patent No. 6,501,420 (issued to two inventors in Great Britain) (ECF No. 1-3).  The descriptions above are general in nature, intended to provide the Court with a brief summary of the high-level technologies addressed by the asserted patent.  These summaries should not be read as limiting or as an interpretation of the meaning of any particular claim or claim term.

[4] U.S. Patent No. 7,330,455 (issued to three inventors in Germany) (ECF No.1-1).

[5] U.S. Patent No. 6,434,654 (issued to four inventors in Arizona and California) (ECF No. 1-2).

[6] U.S. Patent Nos. 5,597,668 (issued to four inventors in California), 5,639,697 (issued to three inventors in California), 5,763,955 (issued to two inventors in California) (ECF Nos. 1-4 to 6)

series of smartphones, and the BlackBerry PlayBook tablets.  The accused products are designed at RIM locations throughout the world, manufactured in plants (including in plants operated by third-parties) throughout the world, and are sold throughout the United States. Certain of the devices are accused of infringing the three semiconductor design and manufacturing patents in view of their inclusion of chips that are made by third-parties, though ultimately sold by RIM in the United States.

> **B.    RIM's actions confirm that this District is appropriate and convenient, both for the parties, and also for third parties.**

RIM's presence in this District is far from ephemeral or accidental, but instead reflects a conscious decision and acknowledgement by RIM that Orlando is a convenient and centralized forum that can be easily accessed by its employees and its business partners. Although RIM's first three worldwide conferences (2002–2004) were hosted in various U.S. locations, RIM has chosen Orlando as the location for each and every BlackBerry World conference held since 2005.[7]  RIM has again chosen Orlando as the host city for its planned May 2013 BlackBerry World event.[8]

The BlackBerry World conferences are far from minor undertakings, but are instead billed by RIM as the premiere gathering of RIM's employees, customers, and business partners — or as RIM calls it, the "BlackBerry Global Ecosystem."[9]  According to RIM's promotional materials, event attendance topped 5,500 attendees from 120 countries in 2011;

---

[7] *See* RIM Press Releases (Ex. 3). (RIM's coined the term "BlackBerry World in 2011, prior events were called the RIM "Wireless Enterprise Symposium"); BBW2012 Conference Guide (Ex. 4); BBW2012 Sponsor Guide (Ex. 5).

[8] *See* http://www.blackberryworld.com/event-info.

[9] BlackBerry World 2012 Sponsor Guide at 3 (Ex. 5).

a Keynote Speech by RIM's President and CEO at the 2012 event boasted that 115 countries were represented in person.[10]  BlackBerry World is rife with RIM employees — from executives to high-level product managers, systems architects, applications developers, product designers, marketing programmers, developers, and marketing directors.  Keynote speakers in 2012 included RIM's President & CEO, RIM's CIO, and two Vice Presidents; a Speaker Catalog lists 64 RIM employees as conference sessions speakers.[11]  Apart from these speakers, countless additional RIM employees attend the conference each year.[12]

RIM's BlackBerry World conferences are major events, attracting substantial attention from the media, the technical press, and from RIM's business partners.  The events are used by RIM to showcase — and in many cases to introduce — new products, features and services.  In fact, RIM introduced many of the infringing products to the market at BlackBerry World events, and has directly infringed the patents-in-suit in this forum.  As just one example, in 2011, RIM's senior personnel demonstrated infringement of the asserted GPS patent on an accused device in Orlando.[13]  At the same conference, RIM built out infrastructure to support over 10,000 concurrent Wi-Fi connections — to support connections from infringing RIM devices.[14]  That infrastructure was scaled up to support the introduction of the BlackBerry PlayBook at the conference, where RIM distributed 5,000 of the infringing

---

[10] BBW2012 Sponsor Guide at 4 (Ex. 5); *See* 5/1/2012 Thorsten Heins Keynote Address at 0:55, *available at* http://www.blackberryworld.com/content/webcast (embedding http://www.youtube.com/watch?v=OfHLjlogDS8).

[11] BBW2012 Keynote Speakers (Ex. 6); BBW2012 Speaker Catalog (Ex. 7).

[12] In Mr. Heins' Keynote, for example, he admitted he'd previously been in the audience as an employee-attendee before he rose to his current role.  *See* 2012 Keynote Address at 1:45.

[13] *See, e.g.*, BlackBerry World 2011 - Demo - BlackBerry Messenger, Kobo and Foursquare, *available at* http://www.youtube.com/watch?v=Zqp9NbrSyJ4.

[14] 6/24/2011 BlackBerry World's High Performance Wi-Fi (Ex. 8).

PlayBook devices to conference attendees.[15]  The accused BlackBerry Bold 9900 and 9930

devices were introduced as well.[16]  In 2010, RIM introduced the accused BlackBerry Bold

9650 and Pearl 3G devices.[17]  In addition to BlackBerry World, just this year, RIM also

hosted a "BlackBerry Jam" conference in Orlando (at an additional and separate venue from

BlackBerry World).  This event included labs and sessions instructed by RIM employees for

the development of software applications on the BlackBerry operating system.[18]

### III.   Legal Standard

An action may be transferred to any other district where it might have been brought

under 28 U.S.C. § 1404(a) "for the convenience of parties and witnesses, in the interest of

justice."  Requests for transfer are not rooted in patent law, and are therefore decided under

regional circuit precedent.[19]  The movant bears the burden of establishing that its suggested

venue is more convenient than the one chosen by the plaintiff.[20]  District courts retain broad

discretion in weighing conflicting arguments concerning venue.[21]

---

[15] 5/3/2011 RIM BlackBerry Blog Post, "BlackBerry World Keynote" (Ex. 9).

[16] 5/2/2011 RIM Press Release, "New BlackBerry Bold 9900 and 9930 Smartphones" (Ex. 10).

[17] 4/26/2010 RIM Press Releases, "RIM Introduces the New BlackBerry Bold 9650 Smartphone" and "RIM Introduces the New BlackBerry Pearl 3G Smartphone" (Ex. 11).

[18] 3/15/2012 BerryReview, "BlackBerry 10 Jam Developer Conference Announced for May 1st-3rd" (Ex. 12).

[19] *E.g.*, *In re TS Tech USA Corp.*, 551 F.3d 1315, 1319 (Fed. Cir. 2008) ("Because this petition does not raise issues unique to our jurisdiction, we apply the law of the regional circuit in which the district court sits . . . .").

[20] *In re Ricoh Corp.*, 870 F.2d 570, 573 (11th Cir. 1989) (per curiam) ("Because federal courts normally accord deference to a plaintiff's choice of forum in a motion under § 1404, the burden is on the movant to show the suggested forum is more convenient.").

[21] *Id.* at 573 n.5; *England v. ITT Thompson Indus., Inc.*, 856 F.2d 1518, 1520 (11th Cir. 1988).

In this Circuit, a plaintiff's choice of forum is afforded considerable deference: "The plaintiff's choice of forum should not be disturbed unless it is clearly outweighed by other considerations."[22]  The plaintiff's choice of forum creates a presumption that the case should remain where filed; to overcome that burden, a movant must show that the balance of conveniences is strongly in favor of transfer.[23]  A moving party is expected to come forward with actual evidentiary support for its arguments; arguments based on speculation and suspicion are not entitled to any weight.[24]  "In all events, when a transfer of venue would merely shift the inconvenience from the defendant to the plaintiff, the plaintiff's choice of forum should not be disturbed."[25]

The Eleventh Circuit has enumerated nine factors to be considered in assessing the propriety of a requested transfer § 1404(a):

> (1) the convenience of the witnesses; (2) the location of relevant documents and the relative ease of access to sources of proof; (3) the convenience of the parties; (4) the locus of operative facts; (5) the availability of process to compel the attendance of unwilling witnesses; (6) the relative means of the parties; (7) a forum's familiarity with the governing law; (8) the weight accorded a plaintiff's choice of forum; and (9) trial efficiency and the interests of justice, based on the totality of the circumstances.[26]

---

[22] *Robinson v. Giamarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir. 1996) (quoting *Howell v. Tanner*, 650 F.2d 610 (5th Cir. 1981)); *Suomen Colorize Oy v. Dish Network LLC*, 801 F. Supp. 2d 1334, 1337 (M.D. Fla. 2011).

[23] *Sterling v. Provident Life and Accident Insurance Co.*, 519 F. Supp. 2d 1195, 1206 (M.D. Fla. 2007) ("In order to overcome the presumption in favor of plaintiff's choice of forum, the movant must show the balance of the conveniences is strongly in favor of the transfer.").

[24] *E.g.*, *Operating Systems Solutions, LLC v. Apple, Inc.*, No. 8:11-cv-1754, slip op. at 5 (M.D. Fla. Jan. 30, 2011) (ECF No. 37) ("These arguments, which are based on speculation and suspicion, are not entitled to any weight.") (attached as Ex. 19).

[25] Trinity Christian Ctr. of Santa Ana, Inc. v. New Frontier Media, Inc., 761 F. Supp. 2d 1322, 1328–29 (M.D. Fla. 2010).

[26] *Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 n.1 (11th Cir. 2005).

The above factors are weighed together; no single factor is dispositive.[27]

## IV.    Analysis

### A.    RIM improperly seeks to import precedent applied in other Circuits, and fails to account for its acquiescence and delay.

RIM's Motion opens by focusing on a recitation of mandamus decisions issued by the Federal Circuit in response to a litany of petitions arising out of the Eastern District of Texas. Each of those decisions, of course, rests on the Federal Circuit's analysis under *Fifth Circuit* law and the particular facts in those cases; RIM attempts to argue that the factors are "highly similar," but fails to account for relevant differences in Circuit practice.[28]  Most notably, RIM's improper suggestion that NXP B.V.'s filing of the instant action in Orlando is afforded little or no weight, an argument that conflicts with Eleventh Circuit precedent, and which has been expressly rejected a by another court in this District when faced with a similar argument. [29]

RIM also ignores precedent in the Eleventh Circuit and in this District that takes into account a movant's acquiescence to venue, or the delay in seeking a transfer.[30]  RIM does nothing to explain its five-month delay in seeking a venue transfer or its silence on the transfer issue in connection with the Case Management Filing.  Consistent with local

---

[27] *Id.* at 1137.

[28] *See* RIM's Motion at 10-11.

[29] *See Robinson v. Giarmarco & Bill, P.C.*, 74 F.3d 253, 260 (11th Cir 1996); *Perlman v. Delisfort-Theodule*, 451 Fed. Appx. 846, 848 (11th Cir. 2012); *Trinity*, 761 F. Supp. 2d at 1330; *Omega Patents, LLC v. Lear Corp.*, No. 6:07-cv-1422, slip op. at 6-7 (ECF No. 96) (M.D. Fla. May 27, 2009) (attached as Ex. 20).

[30] *SEC v. Lauer*, No. 09-15138, 2012 U.S. App. LEXIS 7889, at *7 (11th Cir. 2012) ("By submitting to the court's authority on a number of occasions before contesting venue, Lauer arguably waived his venue objection." (citing *Baragona v. Kuwait Gulf Link Transp. Co.*, 594 F.3d 852, 854 (11th Cir. 2010)));  *Omega Patents, LLC v. Lear Corp.*, No. 6:07-cv-1422, slip op. at 6-7 (ECF No. 96) (M.D. Fla. May 27, 2009) (attached as Ex. 20).

practice, the counsel for the parties — including an in-house RIM employee — met in person in July within this District to discuss all aspects of case management, deadlines, and planning.  Mention of a request for transfer appears nowhere in RIM's positions, nor does RIM provide any basis for its delay.[31]  The likely parties and witnesses have not changed since the case was filed; and since filing RIM has known of the implicated RIM products and patents, including regarding relevant third-parties.  Nor can it be said that RIM was diligently working during these intervening months to identify third party witnesses or to determine their availability — considering that not a single one is identified by RIM.

RIM's acquiescence and delay do little to further the interests of justice or to promote judicial efficiency, the Parties and Court having already established case deadlines, a trial schedule, and discovery and disclosure obligations.  Indeed, discovery in this case is underway; infringement interrogatory contentions have already been served and answered, and document production is underway.  These facts weigh heavily against transfer.

**B.  Suppositions, guesses, and half-truths cannot satisfy RIM's evidentiary burden to show that a transfer is warranted.**

Although precedent demands that RIM come forward with actual proof in support of its arguments — such as naming unavailable or unwilling third-party witnesses — RIM's Motion is largely based on speculation and supposition rather than on actual facts or evidence.[32]  Supposition falls short of the convincing showing required for transfer.[33]

---

[31] *See* 7/23/2012 Case Management Report (ECF No. 57).

[32] *See, e.g.*, *Perlman v. Delisfort-Theodule*, 451 Fed. Appx. 846, 848 (11th Cir. 2012) (denial of transfer affirmed, including because movant did not "identify any witnesses who could not or would not testify unless the case was transferred").  The declaration in support of RIM's motion is signed by an in-house attorney; no proof is offered that any particular witness (third party or otherwise) will be adversely affected by a potential trial in Orlando.

Although NXP B.V. will address certain salient points of particular relevance to the Eleventh

Circuit's nine-factor analysis in the next section below, a collection of RIM's "guessing"

demonstrates that RIM's arguments lack support and are of questionable relevance.

Examples include:

- "The *potential* party witnesses and documents in this case *appear* primarily to reside in . . . ." (p. 4).

- "Messrs. Branch and Borst are *likely knowledgeable* about many of the technical aspects of the accused products." (p. 5).

- "Samsung Telecommunications America is headquartered in the Dallas area, a fact that *may be* particularly relevant because all of the accused products are telecommunications devices." (p. 8).

- "The Northern District of Texas also *appears to be* a more convenient for TriQuint." (p. 9).

- "On the other hand, many *likely* witnesses . . . ." (p. 13).

- "RIM Corp.'s headquarters is *likely* to possess . . . ." (p. 14).

- "As to any other potential witnesses that are not in Texas, most *appear to be* in locations . . . ." (p. 14).

- "The location of the majority of RIM's relevant documents *is likely* either at RIM's U.S. Headquarters in Irving, Texas or RIM's Canadian offices." (p. 16).

- "Finally, *likely* third-party documents are much closer to . . . ." (p. 16).

- "RIM *very likely will* require testimony from third-party witnesses . . . many of which *are likely* to reside in Texas." (p. 19).

RIM's suppositions are especially troublesome considering that many apply to RIM itself, to

the accused RIM products, and to third parties with whom RIM has long-established business

relationships — suppliers of certain of the chips that power its products.

---

[33] *Garay v. BRK Electronics*, 755 F. Supp. 1010, 1011 (M.D. Fla. 1991).

1.      **RIM posits that the relevant locations of its third-party suppliers are in Texas; publicly accessible records reveal otherwise.**

RIM goes out of its way to *suppose* that the "likely" third party witnesses are located near its desired venue in Dallas.  RIM's suppositions should be given no weight, especially considering that many cannot be supported in fact.

NXP B.V. has identified the presence of certain Samsung memory modules in the accused RIM devices as relevant to some of the asserted claims.  In response, RIM supposes that Samsung Telecommunications America ("STA"), based in Houston, is the relevant Samsung party.  But that supposition is baseless.  STA is the Samsung entity responsible for Samsung-branded mobile phones, not the Samsung-branded *components* embedded into RIM's infringing devices.  A cursory review of Samsung's website reveals that a different Samsung entity (Samsung Semiconductor) is responsible for the memory components relevant to this proceeding.[34]  It is inexcusable that RIM cannot provide actual facts concerning the companies from whom it ultimately procures the parts that it places into the infringing devices — especially given RIM's unsupported speculation to the Court that such companies may be "unwilling" to participate in this proceeding.

Similar shortcomings are readily apparent in RIM's discussion of the Hynix memory products.  RIM argues that Hynix has offices in Dallas and Richardson, favoring transfer.[35]  But the Texas offices are merely sales offices; the location in Richardson has a single employee — as Hynix has stated in prior declarations, and can be confirmed with a phone

---

[34] *See* About Samsung - U.S. Divisions (Ex. 13) (describing activities of U.S. business units).
[35] RIM's Motion at 9.

call.[36]  Hynix is a Korean corporation with three manufacturing sites:  Icheon and Cheongu

in Korea and Wuxi, China.[37]  And while Hynix Semiconductor America, Inc. is based in

California, RIM offers no actual evidence of who or what may be relevant from Hynix, nor

where that evidence is actually located.  Nonetheless, because the implicated patents involve

semiconductor manufacturing and fabrication, it is far more likely that documentary evidence

will be located in the overseas fabrication and manufacturing facilities than in the United

States — but in no likelihood is a single-person sales office in Texas relevant to this matter.

RIM jumps to similar conclusions with respect to TriQuint, another RIM vendor.

Without a declaration from its own vendor, RIM jumps to the conclusion that it desires . . .

that the identified TriQuint chips "*appear to have been manufactured* at TriQuint's other

fabrication facility *in Richardson, Texas*."[38]  RIM's attorney argument, however, ignores

technical details made available on TriQuint's website that indicate otherwise.  According to

TriQuint's materials, the identified chip is made using a process ("InGaP") that is

documented in Oregon, and listed as a process run in the Oregon facility.[39]  There is no basis

to conclude that any relevant TriQuint evidence is based in Texas, or that a witness'

testimony would even be necessary, or that Dallas is more convenient than Orlando, or that

TriQuint would be unavailable or unwilling to participate in this forum.

---

[36] *See* 12/13/2004 Declaration of Sun Kwan Choi, Vice President of Semiconductor Sales Operations at Hynix Semiconductor, America, Inc. ¶6 (filed in support of a Hynix motion to transfer *out of* the Northern District of Texas) ("HSA employs one person in the Northern District of Texas: an administrative support person who works from her home in Richardson, Texas.") (Ex. 14).  *See also* Win Decl. ¶ 17.

[37] 2012 Hynix Annual Report at 8 (Ex. 15).

[38] RIM's Motion at 9.

[39] *See* TQM7M5005H Product Details (Ex. 16); TQHBT Process Sheet (Ex. 17); TriQuint Process Publications (Ex. 18).

**2.    RIM misrepresents or ignores the parties' contentions and the breadth of the accused products.**

RIM also relies on oversimplifications and half-truths rather than providing a clear picture for the Court's consideration.  As just one example, RIM states: "NXP's infringement claim is based on its belief that RIM sells products that incorporate chips produced by third parties."[40]  In actuality, the '420 patent is directed at the entirety of a phone and its related operating system and applications (not the more incorporation of a third party chip).  As another example, RIM states: "[S]everal of the accused BlackBerry Torch and Curve products were developed by Irving-based product development teams."[41]  Tellingly, RIM does not specify *which* models or *which aspects* of the devices are developed in Irving, and RIM ignores *entire other families* of accused products — including the Bold, Pearl, Style, and PlayBook products — which are presumably *not* designed in Texas.[42]

**C.    Weighing all factors, transfer is not warranted.**

**1.    The convenience of the witnesses.**

RIM has not met its burden to demonstrate the applicability of this factor, having failed to provide proof of any actual third-party witnesses or a statement of relative convenience.  Much of RIM's Motion focuses on the relative convenience for RIM witnesses, such as the availability of a guest office or other facilities.[43]  This factor, however,

---

[40] RIM's Motion at 4.

[41] RIM's Motion at 5.

[42] RIM also fails to address *which aspects* the design of the unnamed products occurred in Irving, much less whether such work is relevant to this litigation. Apart from a vague paragraph in an attorney declaration, RIM offers no proof of this alleged fact, nor the name of any document in evidence this simple fact.

[43] RIM's Motion at 12-14.

properly focuses on the convenience of ***non-party*** witnesses; its significance is "diminished when the witnesses, although in another district, are employees of a party and their presence at trial can be obtained by that party."[44]  RIM's Motion fails to identify by name or location any actual non-party witness, much less provide proof that Dallas would be more convenient than Orlando.[45]  As to many of the "potential" non-party witnesses that are "presumably" located in Europe, Orlando is considerably closer than is Dallas.  And, if the RIM witnesses are considered, Ottawa is actually closer to Orlando than it is to Dallas, as RIM's Motion concedes.  No weight should be afforded to this factor.

> **2.      The location of relevant documents and the relative ease of access to sources of proof.**

This factor should be afforded little to no weight in view of RIM's failure to provide any particularized or non-speculative evidence regarding this factor.  Courts recognize that the physical "locations" of electronic documents are less relevant to this factor, in view of technological advancements in electronic document imaging and transfer.[46]  RIM's Motion admits that the relevant RIM documents are available electronically, and are actually hosted or accessible outside of Texas (at RIM's worldwide headquarters in Ottawa, where most of RIM's design and technical operations take place).  Again, as to third parties, RIM offers no

---

[44] *See Trinity*, 761 F. Supp. 2d at 1327 (citing 15 Wright & Miller, Fed. Prac. & Proc.: Civil 3d § 3851).

[45] *FTC v. Direct Benefits Group, LLC*, No. 6:11-cv-1186, 2012 U.S. Dist. LEXIS 121906, at *13 (M.D. Fla. Aug. 7, 2012) ("The Court is not persuaded by Defendants' argument because it is not supported by evidence of specific witnesses who are unwilling to participate in this case on account of cost or inconvenience.").

[46] *Trinity*, 761 F. Supp. 2d at 1327; *see also Mason v. Smithkline Beecham Clinical Labs.*, 146 F. Supp. 2d 1355, 1364 (S.D. Fla. 2001) ("Further, in light of technological advancements in document imaging, management, and retrieval, it is unlikely that document production will be unduly burdensome if transfer is denied.").

actual proof as to the location of any third-party documents or the relative ease of access to third-party sources of proof.  Deposition testimony may be taken and admitted at trial as necessary; although live testimony may be preferred, RIM's failure to identify the substance of the testimony or name of any key witness weighs against RIM's request.[47]

### 3. The convenience of the parties.

This factor does not support transfer.  It seems an act of desperation for a company whose entire product offering is geared toward keeping entire enterprises connected outside the office  (completely and securely) to argue that its own employees cannot get their work done without a tethered connection in an office at a corporate-owned location.  Nonetheless, *every year* RIM transplants its employees from their offices in Texas, Ottawa, and beyond, and sends them to Orlando, where they are expected to carry out their duties outside of any RIM office and based in a hotel room.  As compared with RIM's annual exodus to Orlando, a miniscule subset of employees may attend an eventual trial in this matter, for testimony lasting less than a day in a trial that will take less than two weeks.

At the end of the day, it is clear that RIM's end-game is to delay a trial of this matter and gain a home-field advantage in Texas, with no actual regard for any other party or third parties.  That effort is improper and should be rejected.[48]  Minimal weight should be afforded to RIM's arguments.

---

[47] *E.g.*, *Zurich Am. Ins. Co. v. Renasant Ins. Co*., No. 8:10-CV-1769, 2011 U.S. Dist. LEXIS 17641, at *18 (M.D. Fla. Feb. 23, 2011) (Rejecting similar argument because "Defendant has not shown that its Mississippi witnesses cannot effectively present their testimony by deposition, nor have Defendants identified the substance of the testimony.").
[48] *Trinity*, 761 F. Supp. 2d at 1328–29.

### 4. The locus of operative facts.

This factor, properly considered, does not favor transfer. Again, RIM does no more than hand waving by arguing that the locus of operative facts is in Texas because "several of the accused products" were purportedly developed by its Texas engineers.[49] As explained previously, however, RIM fails to identify which models were designed in Texas nor does it specify whether particular aspects of the device relevant to the patents-in-suit were designed there. Absent such evidence, RIM cannot meet its burden of proving that Texas is more convenient than Florida.

On the other hand, there is ample evidence showing RIM's infringing activity in the Middle District of Florida. For example, RIM has chosen Orlando as the venue to unveil a number of the accused products such as the BlackBerry Bold 9900 and 9930 and the BlackBerry PlayBook, as well as demonstrating several of the other accused products.[50] This year in Orlando, RIM also held a separate developer's conference with instructor-led labs for the development of software applications and features on BlackBerry products.[51] Furthermore, RIM built out a large-scale 802.11 Wi-Fi network to provide wireless connectivity to 10,000 concurrent users of mobile devices including the accused BlackBerry devices.[52] In fact, this same network was used by RIM's co-CEOs to introduce and demonstrate the accused BlackBerry PlayBook in 2011.[53]

---

[49] RIM's Motion at 18.

[50] *See supra* notes 15–17.

[51] 3/15/2012 BerryReview, "BlackBerry 10 Jam Developer Conference Announced for May 1st-3rd" (Ex. 12).

[52] *See* Ex. 8.

[53] *See* Ex. 9.

In addition to the above infringing activity, there is also evidence of RIM's design and development activity related to the accused products.  The operating system or "OS" of a smart phone is the glue that brings the hardware and software together to life for the user to realize the true functions and capabilities of the device.  RIM's BlackBerry OS is no exception as the enabling platform for BlackBerry application developers to offer features such as GPS power-saving, which is taught by the '420 Patent.  However, RIM omits the fact that BlackBerry OS is developed by its "OS Department" in Fort Lauderdale, Florida.[54] Indeed, RIM's own job postings website describes its department in Fort Lauderdale as its "core handheld software group" that deals with "various low level device drivers, CPU bring up, *power optimization techniques*, and development of new advanced debugging capabilities."[55]

Therefore, contrary to any suggestion by RIM that this case has no nexus with the state of Florida, not only has significant infringing activity has occurred there, but integral aspects of the accused products relevant to the patents-in-suit are also designed and developed there.  These facts weigh heavily against transfer.

     5.      **The availability of process to compel the attendance of unwilling witnesses.**

Having been offered no proof on this issue, the Court should award this factor no weight.  As discussed above, RIM has not identified a single actual non-party witness located within the subpoena power of the Dallas court that it expects to call to testify at trial (and the facts show that a majority of the third-party chip suppliers are based *outside* of Texas).  Nor

---

[54] *See*, *e.g.*, Ex. 2.
[55] *Id*. (emphasis added).

has RIM identified any witness as actually unwilling to testify at trial absent compelled attendance.  As a result, this factor should receive little or no weight.[56]

### 6.      The relative means of the parties.

This factor is neutral and need not be considered, as RIM concedes.

### 7.      The forum's familiarity with the governing law.

This factor is neutral, and therefore does not support transfer.  RIM argues that the Northern District of Texas may be more qualified to hear patent cases than is this Court in view of its participation in a patent pilot program.[57]  This Court, however, is well versed in the applicable law, and has efficient means to handle patent cases.  No weight should be afforded to this factor.

### 8.      The weight accorded a plaintiff's choice of forum.

NXP B.V.'s choice of forum should be afforded considerable weight under applicable Circuit and District precedent, weighing strongly against transfer.  Although the deference may apply with less force if a party is not a resident of the District, deference is afforded nonetheless.[58]  Moreover, unlike other cases addressing this factor, this is not a case where NXP B.V. filed an action outside of its home District — as a foreign plaintiff, NXP. B.V. does not have a "home district."  Likewise, there is no showing (or basis for one) that NXP B.V. has attempted to manufacture or otherwise manipulate venue or jurisdiction.  In addition, the local rules and procedures of this forum differ from those in the Northern

---

[56] *E.g.*, *Operating Systems Solutions, LLC v. Apple, Inc.*, No. 8:11-cv-1754, slip op. at 5 (M.D. Fla. Jan. 30, 2011) (ECF No. 37) (factor neutral where movant did not identify actual witness) (attached as Ex. 19).

[57] RIM's Motion at 20.

[58] *Omega Patents, LLC v. Lear Corp.*, No. 6:07-cv-1422, slip op. at 7 (ECF No. 96) (M.D. Fla. May 27, 2009) (Ex. 20).

District of Texas.  A transfer will require a reworking of already agreed-upon deadlines and disclosures — including infringement contentions interrogatory responses already served. These facts also weigh against disturbing NXP B.V.'s choice of forum.

> **9.    Trial efficiency and the interests of justice, based on the totality of the circumstances.**

This factor weighs considerably against transfer. Trial efficiency and the interests of justice are not served by transferring this case given RIM's acquiescence to this District and its delay in seeking transfer.  RIM attended an in-person case management meeting in this District to address trial scheduling, discovery, logistics, and other matters, and filed a joint report regarding the same.  Nowhere in the case management report — where such an issue should have been raised — did RIM give any impression that it found this forum inconvenient.  RIM appeared to be fully willing and prepared to move forward the case before this Court, and the joint report reflects a schedule largely of RIM's choice.  Detailed infringement contentions interrogatory responses have been served by NXP B.V.  RIM's invalidity contentions are due to be served in a few weeks, as well.  Moreover, the parties negotiated detailed provisions concerning disclosure and infringement / invalidity contentions interrogatory procedures and deadlines (with initial infringement positions already served); transferring the case will require considerable rework in view of conflicting local patent rules in RIM's target district.  Given RIM's acquiescence and that this case is progressing on track with discovery is well under way, transfer to another Court does little to promote trial efficiency and the interests of justice.

## V.      Conclusion

In view of RIM's long-standing and demonstrated view that Orlando is a highly convenient forum to host all things BlackBerry — including hundreds of its employees and thousands of its customers and business partners from around the globe for several days — it is disingenuous for RIM to argue that this forum is suddenly inconvenient for a trial concerning infringement by the BlackBerry devices.  RIM has not meet is burden in demonstrating that a trial in Texas would be clearly more convenient than a trial in Orlando, having failed to provide actual evidence in support of its claims concerning the availability and convenience of witnesses and evidence.  The parties met in this District and negotiated a detailed trial plan entered by this Court; the proceedings are well underway.  RIM's delay in seeking transfer undermines the efficiency of the trial process and would restart the clock and require the parties to once again rehash the logistics.  NXP B.V. respectfully requests that the Court deny RIM's Motion to Transfer.

Dated:  September 21, 2012                    Respectfully Submitted,


                                              _/s/ Denise M. De Mory_


                                              Denise M. De Mory (Admitted *pro hac vice*)
                                              Matthew F. Greinert (Admitted *pro hac vice*)
                                              Aaron R. Hand (Admitted *pro hac vice*)
                                              Cliff Win (Admitted *pro hac vice*)
                                              BUNSOW, DE MORY, SMITH & ALLISON LLP
                                              55 Francisco Street, 6th Floor
                                              San Francisco, CA 94133
                                              Telephone:  (415) 426-4747
                                              Facsimile:  (415) 426-4744
                                              E-Mail:  ddemory@bdiplawl.com
                                              E-Mail:  mgreinert@bdiplaw.com

E-Mail:  ahand@bdiplaw.com
E-Mail:  cwin@dl.com

CHRISTOPHER T. HILL, ESQ.
Florida Bar No.: 0868371
HILL, RUGH, KELLER & MAIN, P.L.
390 N. Orange Avenue, Suite 1610
Orlando, Florida 32801
Telephone:  (407) 926-7460
Facsimile:  (407) 926-7461
Email:  chill@hrkmlaw.com

**Counsel for Plaintif NXP B.V.**

## CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was electronically filed with the Clerk of the Courts by using the ECF system.

Dated:  September 21, 2012

_/s/ Denise M. De Mory_

Denise M. De Mory