**IN THE UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**ORLANDO DIVISION**

NXP B.V.,

     *Plaintiff*,

     v.

BLACKBERRY, LTD. and

BLACKBERRY, CORP.,

     *Defendants*.

6:12-CV-498-ACC-TBS

**BLACKBERRY'S MOTION TO EXCLUDE**

**TESTIMONY OF NXP'S EXPERTS MR. ROY WEINSTEIN,**

**<u>DR. ALON KONCHITSKY, AND DR. BRUCE W. SMITH</u>**

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   CERTIFICATION OF L.R. 3.01(G) CONFERRAL ........................................ 3

III.  LEGAL STANDARDS ........................................................................................ 3

IV.   MR. WEINSTEIN'S OPINIONS AS TO THE '420 AND '455 PATENTS
      AND HIS ALTERNATIVE OPINION AS TO THE '654 PATENT SHOULD
      BE EXCLUDED .................................................................................................. 4

      A.    Reasonable Royalty Analysis ................................................................. 4

      B.    Mr. Weinstein's Opinions as to the '420 Patent Should be Excluded
            Because His Royalty Rate is Untethered to the Facts and His
            Calculations are Based Upon Flawed Science in an Area Outside His
            Expertise ................................................................................................. 5

            1.    Rules of thumb untethered to the facts of a case are per se
                  unreasonable under Federal Circuit law ...................................... 6

            2.    Mr. Weinstein's '420 damages opinion is based on a factually
                  incorrect premise that is contrary to NXP's own technical
                  expert on power savings.............................................................. 9

            3.    Mr. Weinstein's '420 damages opinion erroneously calculates
                  the amount to which he applies the 50% rule of thumb.......... 11

      C.    The Court Should Exclude Mr. Weinstein's Alternative Royalty Rate
            Opinion for the '654 Patent Because it is Speculative and Not Tied to
            the Facts of This Case. ......................................................................... 13

      D.    Mr. Weinstein's Opinion on the '455 Patent Should be Excluded
            Because He Relies on Incomparable Licenses...................................... 14

V.    DR. KONCHITSKY'S TESTIMONY SHOULD BE EXCLUDED
      BECAUSE IT IS CONCLUSORY AND THUS CANNOT ASSIST THE
      TRIER OF FACT................................................................................................ 17

      A.    Conclusory Expert Testimony Does Not Assist the Trier of Fact and
            Should Be Excluded under *Daubert* ................................................... 18

      B.    Dr. Konchitsky's Validity Opinions on the '455 Patent Should be
            Excluded Because They Are Conclusory and Provide No Factual
            Background or Analysis......................................................................... 18

VI.   DR. SMITH'S OPINIONS PERTAINING TO HYNIX, SANDISK, AND QUALCOMM CHIPS AND HIS OPINIONS RELATED TO SECONDARY CONSIDERATIONS SHOULD BE EXCLUDED IN THEIR ENTIRETY .................. 21

    A.   Dr. Smith's opinions relating to Hynix, SanDisk and Qualcomm Chips should be excluded, consistent with the Court's prior Order, because those opinions lack sufficient factual foundation and analysis........................... 21

    B.   Dr. Smith's opinions as to secondary considerations should also be excluded because he does not show the required nexus to the patents' claims ............................................................................................................... 25

VII.   CONCLUSION.......................................................................................................... 28

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Asyst Techs., Inc. v. Emtrak, Inc.,*
  544 F.3d 1310 (Fed. Cir. 2008)....................................................................26

*Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.,*
  402 F.3d 1092 (11th Cir. 2005) ...........................................................18, 25

*Cornell Univ. v. Hewlett-Packard Co.,*
  609 F. Supp. 2d 279 (N.D.N.Y. 2009) (Rader, J.) ......................................5

*Dataquill Ltd. v. High Tech Corp.,*
  887 F. Supp. 2d 999 (S.D. Cal. 2011)........................................................14

*Daubert v. Merrell Dow Pharms., Inc.,* 509 U.S. 579 (1993) ............................. passim

*Dynetix Design Solutions, Inc. v. Synopsys, Inc.,*
  Case No. C 11-05973, 2013 WL 4538210 (N.D. Cal. Aug. 22, 2013)....................8

*Gen. Elec. Co. v. Joiner,*
  522 U.S. 136 (1997).............................................................................18, 24

*Gen-Probe Inc. v. Becton Dickinson & Co.,*
  2012 WL 9335913, Case Nos. 09–cv–2319 & 10–cv–602 (S.D. Cal. Nov. 26,
  2012) .............................................................................................................8

*Georgia-Pacific Corp. v. U.S. Plywood Corp.,*
  318 F. Supp. 1116 (S.D.N.Y. 1970), *mod'd and aff'd*, 446 F.2d 295 (2d Cir. 1971)........6, 7, 8

*Graham v. John Deere Co. of Kansas City,*
  383 U.S. 1 (1966)........................................................................................26

*Hudgens v. Bell Helicopters/Textron,*
  328 F.3d 1329 (11th Cir. 2003) .................................................................18

*In re Huai-Hung Kao,*
  639 F.3d 1057 (Fed. Cir. 2011)............................................................26, 27

*Innogenetics, N.V. v. Abbott Labs.,*
  512 F.3d 1363 (Fed. Cir. 2008)..................................................................18

*Krippelz v. Ford Motor Co.*,
    667 F.3d 1261 (Fed. Cir. 2012)..........................................................................18

*Kumho Tire Co. v. Carmichael*,
    526 U.S. 137 (1999)............................................................................................3

*L & W, Inc. v. Shertech, Inc.*,
    471 F.3d 1311 (Fed. Cir. 2006)..........................................................................23

*Lucent Techs., Inc. v. Gateway, Inc.*,
    580 F.3d 1301 (Fed. Cir. 2009)...............................................................5, 15, 17

*McClain v. Metabolife Int'l, Inc.*,
    401 F.3d 1233 (11th Cir. 2005) ..........................................................................18

*Mformation Techs., Inc. v. Research in Motion Ltd.*,
    2012 WL 1142537 (N.D. Cal. Mar. 29, 2012), *appeal pending*, Case No. 12-1679
    (Fed. Cir.)..............................................................................................................9

*Oracle Am., Inc. v. Google Inc.*,
    798 F. Supp. 2d 1111 (N.D. Cal. 2011), *appeal pending*, Case No. 13-1021 (Fed.
    Cir.) ..................................................................................................................7, 8

*Phillips Petroleum Co. v. Huntsman Polymers Corp.*,
    157 F.3d 866 (Fed. Cir. 1998).............................................................................18

*Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*,
    711 F.3d 1348 (Fed. Cir. 2013)...........................................................................24

*Rembrandt Vision Technologies, L.P. v. Johnson & Johnson Vision Care, Inc.*,
    282 F.R.D. 655 (M.D. Fla. 2012) ........................................................................25

*ResQNet.com, Inc. v. Lansa, Inc.*,
    594 F.3d 860 (Fed. Cir. 2010).............................................................................11

*Rink v. Cheminova, Inc.*,
    400 F.3d 1286 (11th Cir. 2005) ................................................................... passim

*Sanofi-Aventis Deutschland GmbH v. Glenmark Pharmaceuticals Inc., USA*,
    Case No. 07–cv–5855 2011 WL 383861 (D.N.J. Feb. 3, 2011), *appeal pending*,
    Case No. 12-1489 (Fed. Cir.).................................................................................8

*SimpleAir, Inc. v. AWS Convergence Techs., Inc.*,
    Civ. No. 2:09-cv-289, Dkt. No. 507 (E.D. Tex. Apr. 3, 2012) ...............................8

*Suffolk Techs. LLC v. AOL Inc.*,
    Case No 1:12cv625, Dkt. No. 518 (E.D. Va. Apr. 12, 2013), *appeal pending*, Case
    No. 13-1392 (Fed. Cir.)...................................................................................6, 7, 8

*Summit 6, LLC v. Research in Motion Corp.*,
    Case No. 3:11-cv-367-O (N.D. Tex. June 26, 2013), Dkt. 661, *appeal pending sub
    nom. Summit 6, LLC v. Samsung Electronics Co.*, Case No. 13-1651 (Fed. Cir.)....................8

*TQP Dev., LLC v. Merrill Lynch & Co., Inc.*,
    No. 2:08-CV-471, 2012 WL 3283356 (E.D. Tex. Aug. 10, 2012).........................................26

*Uniloc USA, Inc. v. Microsoft Corp.*,
    632 F.3d 1292 (Fed. Cir. 2011)........................................................................ passim

*United States v. Frazier*,
    387 F.3d 1244 (11th Cir. 2004) .......................................................................3, 4

*VirnetX Inc. v. Apple Inc.*,
    925 F. Supp. 2d 816 (E.D. Tex. 2013), *appeal pending sub nom. VirnetX Inc. v.
    Cisco Sys. Inc.*, Case No. 13-1489 (Fed. Cir.) ...........................................................8

*WMS Gaming, Inc. v. Int'l Game Tech.*,
    184 F.3d 1339 (Fed. Cir. 1999)...........................................................................26

*Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*,
    609 F.3d 1308 (Fed. Cir. 2010)...........................................................................17

*Wyers v. Master Lock Co.*,
    616 F.3d 1231 (Fed. Cir. 2010)...........................................................................27

**STATUTES**

35 U.S.C. § 103(a) ...........................................................................................26

35 U.S.C. § 284................................................................................................4

**OTHER AUTHORITIES**

Fed. R. Civ. P. 26(a)(2)......................................................................................2

Fed. R. Civ. P. 403...........................................................................................4, 9

Fed. R. Evid. 403 .............................................................................................2

Fed. R. Evid. 403 .............................................................................................1

Fed. R. Evid. 702 ................................................................................................ passim

# I.    INTRODUCTION

Defendants BlackBerry Limited and BlackBerry Corp. (collectively "BlackBerry") ask this Court to partially exclude the testimony of two experts designated by Plaintiff NXP, B.V. ("NXP"), Roy Weinstein and Dr. Bruce W. Smith, and to exclude in its entirety the testimony of a third expert, Dr. Alon Konchitsky.

On July 17, 2013, Mr. Weinstein, an economist, provided his expert report concerning NXP's purported damages related to the five patents-in-suit. Blackberry asks this Court to exclude the following portions of Mr. Weinstein's testimony for failure to comply with Fed. R. Evid. 702:[1]

- o   Mr. Weinstein's opinion on the damages attributable to the alleged infringement of '420 patent[2] should be excluded because:  (1) his royalty rate is based upon an unreliable 50% rule of thumb instead of being tied to the specific facts of this case, and (2) his underlying assumptions of a hypothesized power savings are unsupported, outside his area of expertise, and contrary to the testimony of NXP's own technical expert.

- o   Mr. Weinstein's alternative damages opinion for the '654 patent,[3] predicated upon his unscientific and unsupported assertion of its "importance," should be excluded as a conclusory opinion that does not arise from reliable principles or methods applied to sufficient facts or data.

---

[1] In addition, for the same reasons he fails to comply with Fed. R. Evid. 702, the probative value that his testimony may have is substantially outweighed by the risk of prejudice and additionally that this testimony would confuse and mislead the finder of fact, which also makes it improper under Fed. R. Evid. 403.
[2] U.S. Patent No. 6,501,420 ("the '420 patent").
[3] U.S. Patent No. 6,434,654 ("the '654 patent").

o Mr. Weinstein's opinion on the '455 patent[4] should be excluded because, under Federal Circuit law, the broad patent cross-licenses upon which he relies are not a proper basis for an opinion as to a hypothetical license for a single patent.

On August 23, 2013, Dr. Konchitsky provided a rebuttal expert disclosure, opining that the '455 patent was not invalid. Dr. Konchitsky's disclosure provides ultimate opinions on validity, but fails to disclose the "basis and reasons" for his opinions as Fed. R. Civ. P. 26(a)(2) requires. At deposition, Dr. Konchitsky again failed to provide support for his opinions, even in response to direct questioning. To allow Dr. Konchitsky to present unsupported assumptions in the guise of expert opinion would violate Fed. R. Evid. 702.[5]

On August 28, this Court held that "Dr. Smith's expert witness opinions for which no analysis was provided prior to the deadline for disclosure of initial expert reports are excluded."[6] In particular, the Court excluded Dr. Smith's analysis of alleged infringement relating to components manufactured by Qualcomm, SanDisk, and Hynix for failure to comply with Fed. R. Civ. P. 26(a)(2).[7] Because the parties cannot agree upon the scope of the Court's prior exclusion, BlackBerry moves for an order excluding any testimony from Dr. Smith about components manufactured by Qualcomm, SanDisk, or Hynix. Moreover, Dr. Smith's opinions regarding secondary considerations of "copying of the invention" and "long felt need for the patented technology" should also be excluded. Neither opinion is supported by evidence demonstrating the required nexus to the patents' claims.

---

[4] U.S. Patent No. 7,330,455 ("the '455 patent").
[5] The opinions would likewise be more prejudicial than probative, in violation of Fed. R. Evid. 403.
[6] Order, Doc. 157 at 26:2-6.
[7] *Id.* at 21:19-21, 22:8-14.

## II. CERTIFICATION OF L.R. 3.01(G) CONFERRAL

Prior to filing this motion, Counsel for BlackBerry initiated a good faith conferral with Counsel for NXP regarding the relief requested in this motion. NXP opposes the relief requested herein.

## III. LEGAL STANDARDS

To offer expert testimony, NXP must show, by a preponderance of the evidence, that "(1) the expert is qualified to testify competently regarding the matters he intends to address; (2) the methodology by which the expert reaches his conclusions is sufficiently reliable as determined by the sort of inquiry mandated in *Daubert* [*v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993)]; and (3) the testimony assists the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue."[8] Failing to meet any of the three requirements warrants exclusion of the testimony.[9]

"Federal Rule of Evidence 702 imposes a special obligation upon a trial judge to 'ensure that any and all scientific testimony . . . is not only relevant, but reliable.'"[10] The subject of an expert's testimony must be grounded in the methods and procedures of science and based on "more than subjective belief or unsupported speculation."[11] In fulfilling its gatekeeping obligation, a district court must engage in a "rigorous" inquiry to determine whether the *Daubert* requirements are met.[12]

---

[8] *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005) (citations omitted).
[9] *See id.*
[10] *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 147 (1999) (quoting *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 589 (1993)).
[11] *Daubert*, 509 U.S. at 598-90.
[12] *United States v. Frazier*, 387 F.3d 1244, 1260 (11th Cir. 2004).

An expert's opinion "can be both powerful and quite misleading because of the difficulty in evaluating it."[13]  Courts thus may exclude under Fed. R. Evid. 403 even "expert opinions that otherwise meet the admissibility requirements [of Fed. R. Evid. 702,] . . . . if the probative value of otherwise admissible evidence is substantially outweighed by its potential to confuse or mislead the jury . . . ."[14]

## IV.    MR. WEINSTEIN'S OPINIONS AS TO THE '420 AND '455 PATENTS AND HIS ALTERNATIVE OPINION AS TO THE '654 PATENT SHOULD BE EXCLUDED

NXP has engaged Mr. Weinstein to opine on the alleged damages NXP has suffered due to BlackBerry's alleged infringement of five patents.  This motion seeks to exclude some or all of his opinions as to three of those patents: the '420 patent, the '654 patent, and the '455 patent.

### A.    Reasonable Royalty Analysis

To better understand the flaws in Mr. Weinstein's opinions, some general background regarding the framework he applied is helpful.  Under United States patent law, a patentee who successfully proves infringement is entitled to "damages adequate to compensate for the infringement, but in no event less than a reasonable royalty for the use made of the invention by the infringer."[15]  A reasonable royalty is normally determined through the lens of a hypothetical negotiation.[16]  This hypothetical negotiation, also called the "willing licensor-willing licensee" approach, "attempts to ascertain the royalty upon which the parties would have agreed had they successfully negotiated an agreement just before infringement

---

[13] *Id.* at 1260.
[14] *Id.* at 1263.
[15] 35 U.S.C. § 284.
[16] *Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1312 (Fed. Cir. 2011).

began."[17]  Through the hypothetical negotiation, the reasonable-royalty calculation

necessarily incorporates two elements: (1) the royalty base, or "the revenue pool implicated

by the infringement," and (2) the royalty rate, or "the percentage [or portion] of that pool

adequate to compensate the plaintiff."[18]

Mr. Weinstein purported to perform a reasonable royalty analysis.  For each patent,

Mr. Weinstein calculated a "per unit" dollar value for the royalty rate.  He then multiplied

that "per unit" rate to the number of accused infringing units (i.e., the royalty base) to

calculate his reasonable royalty figure for damages.[19]

**B.     Mr. Weinstein's Opinions as to the '420 Patent Should be Excluded Because His Royalty Rate is Untethered to the Facts and His Calculations are Based Upon Flawed Science in an Area Outside His Expertise**

For his opinion on the '420 patent, Mr. Weinstein's relies on his belief that the benefit

of the '420 patent is the ███████████████████████████████████████████████

██████████████████████."[20]  This "power savings" assumption is unsupported by any

admissible or reliable evidence; as discussed below, operation consistent with the '420 patent

could actually result in ***increased*** rather than reduced operation of the GPS receiver.

Mr. Weinstein nonetheless opines that the "████████████████████████████████

████████████████████████████████████" and that "█████████████████████████

_____

[17] *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1324 (Fed. Cir. 2009) (internal citations and quotations omitted).  And *Lucent* further explains: "The hypothetical negotiation tries, as best as possible, to recreate the *ex ante* licensing negotiation scenario and to describe the resulting agreement. In other words, if infringement had not occurred, willing parties would have executed a license agreement specifying a certain royalty payment scheme. The hypothetical negotiation also assumes that the asserted patent claims are valid and infringed." *Id.* at 1325.
[18] *Cornell Univ. v. Hewlett-Packard Co.*, 609 F. Supp. 2d 279, 286 (N.D.N.Y. 2009) (Rader, J.).
[19] *See, e.g.*, Ex. 1 (Weinstein Rep.) at ¶ 211.
[20] *Id.* at ¶ 197.

■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■■ ”[21]  Mr. Weinstein then

takes his $0.80 per battery figure (i.e., $0.80 per unit) and arbitrarily allocates 50% of it to

NXP:



As discussed below, such rules of thumb are unreliable and thus inadmissible.

### 1. Rules of thumb untethered to the facts of a case are per se unreasonable under Federal Circuit law

In 2011, the Federal Circuit announced in a case called *Uniloc USA, Inc. v. Microsoft*

*Corp.* that, as a matter of Federal Circuit law, damages awards based upon a 25% rule of

thumb were inadmissible under Fed. R. Evid. 702.[23]  The Federal Circuit held that, because

this rule of thumb "[wa]s a fundamentally flawed tool for determining a baseline royalty rate

in a hypothetical negotiation," any expert testimony relying on the 25 percent rule of thumb

was "inadmissible under *Daubert* and the Federal Rules of Evidence, because it fails to tie a

reasonable royalty base to the facts of the case at issue."[24]

Mr. Weinstein's opinion on damages for the '420 patent should be excluded because

the 50% rule of thumb on which he relies has no greater tie to the facts of this case than does

the 25% rule of thumb that the Federal Circuit has unequivocally rejected.  Mr. Weinstein

has previously been precluded from offering this type of speculative expert testimony.  In

*Suffolk Techs. LLC v. AOL Inc.*, the Eastern District of Virginia excluded Mr. Weinstein's

---

[21] *Id.* at ¶¶ 197-198.
[22] *Id* at ¶ 199 (emphasis added).
[23] *See Uniloc USA, Inc. v. Microsoft Corp.*, 632 F.3d 1292, 1315 (Fed. Cir. 2011).
[24] *Id.*

testimony on grounds that "Weinstein's damages opinion [applying a 50% rule of thumb] is not meaningfully distinguishable from the damages opinion rejected in *Uniloc*."[25] This Court should adopt the reasoning of the *Suffolk* court and similarly exclude Mr. Weinstein's testimony.

The two differences between Mr. Weinstein's 50% rule of thumb and the 25% rule of thumb excluded in *Uniloc* do not render this arbitrary rule any more tied to the facts. First, in *Uniloc*, the 25% rule of thumb was used to calculate a starting point that was subsequently adjusted by application of the *Georgia-Pacific* factors, a well-accepted set of patent damages factors.[26] Here, Weinstein first purportedly applied the *Georgia-Pacific* factors and then applied the rule of thumb. But the revised sequence of operations does not cure the inadmissibility of rules of thumb: an arbitrary percentage of an amount ostensibly tied to the facts of the case still results in an arbitrary amount.[27] Second, 50% rule of thumb is sometimes described as the "Nash bargaining solution," a concept from the branch of mathematics called "game theory" that "purports to define the most mutually beneficial outcome of a two-party bargaining scenario."[28] But, as the Northern District of California held in *Oracle America, Inc., v. Google, Inc.*, "the Nash bargaining solution . . . invite[s] a

---

[25] Ex. 2, *Suffolk Techs. LLC v. AOL Inc.*, Case No 1:12cv625, Dkt. No. 518 at 3-4 (E.D. Va. Apr. 12, 2013) (internal citations omitted), *appeal pending*, Case No. 13-1392 (Fed. Cir.).
[26] *Georgia-Pacific Corp. v. U.S. Plywood Corp.*, 318 F. Supp. 1116, 1120 (S.D.N.Y. 1970), *mod'd and aff'd*, 446 F.2d 295 (2d Cir. 1971).
[27] *See Uniloc*, 632 F.3d at 1317 ("Beginning from a fundamentally flawed premise and adjusting it based on legitimate considerations specific to the facts of the case nevertheless results in a fundamentally flawed conclusion.").
[28] *Oracle Am., Inc. v. Google Inc.*, 798 F. Supp. 2d 1111, 1119 (N.D. Cal. 2011), *appeal pending*, Case No. 13-1021 (Fed. Cir.).

miscarriage of justice by clothing a fifty-percent assumption in an impenetrable facade of mathematics."[29]

In rejecting Mr. Weinstein's testimony, the *Suffolk* court agreed that these two differences were of no moment. Mr. Weinstein's proffered damages theory still relied upon on arbitrary rule of thumb, "albeit one clothed as the [Nash bargaining solution]. The order in which the *Georgia-Pacific* factors are applied does not change the fundamental and fatal flow [sic] of both calculations, namely that the hypothetical rule of thumb was not tied to the facts of the case."[30] Lacking a justifiable tie to the facts of a case, a rule of thumb inevitably leads to inadmissible opinion.

The 50% rule of thumb appears to have been argued more in patent cases only after the Federal Circuit rejected the 25% rule of thumb. Yet, the underlying principles are the same. While district courts have some disagreement on whether to allow the 50% rule of thumb in patent damages opinions, the cases purporting to support the rule have been appealed and based on the Federal Circuit's previous reaction to the 25% rule, it appears it will be treated the same way.[31] BlackBerry respectfully argues that only those courts

---

[29] *Id.* at 1120.

[30] Ex. 2, *Suffolk*, Dkt. No. 518, at 3-4 (internal citations omitted).

[31] *Compare Suffolk at 3-4* (rejecting 50% rule of thumb) *and Oracle Am*, 798 F. Supp. 2d at 1119-20 (same) *and Dynetix Design Solutions, Inc. v. Synopsys, Inc.*, Case No. C 11-05973, 2013 WL 4538210, at *5 (N.D. Cal. Aug. 22, 2013) ("Dr. Black's [50%-rule] methodology is indistinguishable from 25% rule rejected in *Uniloc*, except that it may be even more arbitrary."), *appeal pending*, Case No. 13-1676 (Fed. Cir.) *and Ex. 23 SimpleAir, Inc. v. AWS Convergence Techs., Inc.*, Civ. No. 2:09-cv-289, Dkt. No. 507, at 5-6 (E.D. Tex. Apr. 3, 2012) ("SimpleAir's damages expert . . . may not rely upon the Nash Bargaining Solution.") *with  VirnetX Inc. v. Apple Inc.*, 925 F. Supp. 2d 816, 838-39 & nn. 8-9 (E.D. Tex. 2013) (rejecting argument that "Weinstein did not use the generally accepted methods of applying NBS and thus his analysis [wa]s unreliable."), *appeal pending sub nom. VirnetX Inc. v. Cisco Sys. Inc.*, Case No. 13-1489 (Fed. Cir.) *and Ex. 24, Summit 6, LLC v. Research in Motion Corp.*, Case No. 3:11-cv-367-O (N.D. Tex. June 26, 2013), Dkt. No. 661 (rejecting motion to exclude NBS testimony), *appeal pending sub nom. Summit 6, LLC v. Samsung Electronics Co.*, Case No. 13-1651 (Fed. Cir.) *and Gen-Probe Inc. v. Becton Dickinson & Co.*, 2012 WL 9335913, Case Nos. 09–cv–2319 & 10–cv–602, *3 & n.3 (S.D. Cal. Nov. 26, 2012) (same) *and Sanofi-Aventis Deutschland GmbH v. Glenmark Pharmaceuticals Inc., USA*, Case No. 07–cv–5855 2011 WL 383861, *12-*13 (D.N.J. Feb. 3, 2011) (same),

rejecting the 50% rule of thumb are properly applying the Federal Circuit's decision in *Uniloc* and that allowing an expert to present testimony that relies upon such an arbitrary rule is so unfairly prejudicial as to merit exclusion under both Fed. R. Evid. 702 and Fed. R. Evid. 403.

Moreover, each of the district court patent cases that allowed a 50% allocation of profits between alleged infringer and alleged patent owner did so after determining the expert had expressly tied the allocation to the facts of the case; by contrast, Mr. Weinstein cites to no evidence that BlackBerry and NXP would have agreed to split the alleged $0.80 in cost saving, instead summarily ███████████████████████████ ███████████████."[32] The 50% rule of thumb, already fatally flawed, is doubly so when its arbitrariness is so exposed. Mr. Weinstein's opinions relying upon the 50% rule of thumb should be excluded.

> ## 2. Mr. Weinstein's '420 damages opinion is based on a factually incorrect premise that is contrary to NXP's own technical expert on power savings

Mr. Weinstein's opinion as to the '420 patent should be excluded for the independent reason that it relies upon a factual assumption concerning power savings not tied to the actual facts of the case and is based on unreliable methodology. Mr. Weinstein, an economist with no reported technical expertise or training on the impact of GPS receiver activation on smart

---

*appeal pending*, Case No. 12-1489 (Fed. Cir.); *see also Mformation Techs., Inc. v. Research in Motion Ltd.*, 2012 WL 1142537, *3 n.19 (N.D. Cal. Mar. 29, 2012) (use of NBS as a check on the reasonableness of "extensive" *Georgia-Pacific* not grounds for exclusion of Weinstein's royalty rate calculation), *appeal pending*, Case No. 12-1679 (Fed. Cir.).
[32] Ex. 1 (Weinstein Rep.) at ¶ 199.

phone battery consumption,[33] contradicts NXP's technical expert and wrongly opines that

████████████████████████████████████████████████████████████

████████████████████████"[34] Any opinion that Mr. Weinstein proffers based

on this factually incorrect premise falls short of the requirements for expert opinion and must

be excluded.

As explained by NXP's technical expert, Dr. Donald Alpert, the '420 patent does not

invent any power saving technology:

████████████████████████████████████████████████████████████

████████████████████████████████████████████

Instead, Dr. Alpert explains that the '420 patent teaches to make a "prediction"[36] regarding

when the GPS receiver will be needed so the GPS receiver can earlier proceed to power up

and begin acquiring a location fix.[37] This prediction method allows the GPS receiver to

actually power up prior to a GPS-based request being initiated by the user, which may save

time and result in a faster GPS fix. But sometimes the prediction may be wrong and the

phone will have powered up the GPS receiver and ultimately not need it, resulting in greater

battery consumption.[38] Thus, while turning on the GPS receiver earlier could provide a faster

---

[33] See Ex. 3 (CV of Mr. Weinstein). NXP has not presented Mr. Weinstein as a technical expert. Instead he is offered to provide expert opinion relating to damages associated with the alleged infringed claims.
[34] Ex. 1 (Weinstein Rep.) at § 197.
[35] Ex. 4 (Sep. 11, 2013 Alpert Depo. Tr.) at 323:13-18.
[36] See Id. at 312:15; see also id. at 315:18-24 ("████████████████████████████████████████
███████████████████████████.
[37] The '420 patent refers to this prediction as a determination "in anticipation of a request from [a] website." '420 patent, at 2:40-45.
[38] See Ex. 4 (Sep. 11, 2013 Alpert Depo. Tr.) at 312:18-21 (████████████████████████████████
████████████████████████").

GPS fix, it may also result in greater battery consumption, rather than less. If anything—using the technique taught in the '420 patent actually wastes power at times.

Contrary to Dr. Alpert, Mr. Weinstein bases his damages theory on the alleged power savings of the '420 patent.[39] But "the patentee must sufficiently tie the expert testimony on damages to the facts of the case."[40] Here, Mr. Weinstein has failed to tie his testimony to the facts of the case because the '420 patent is not related to power savings. Mr. Weinstein's entire analysis for the '420 patent is based on this false premise of power savings—tainting his entire opinion. As a result, Mr. Weinstein's opinion on damages for the '420 patent should be excluded in its entirety.

### 3. Mr. Weinstein's '420 damages opinion erroneously calculates the amount to which he applies the 50% rule of thumb

Mr. Weinstein's calculation of alleged power savings is also flawed because he improperly calculated the power savings for the GPS receiver and attributed **all** of the power consumed by a GPS receiver as "power savings." To explain, Mr. Weinstein opined:[41]



In footnote 351 of the paragraph above, Mr. Weinstein explains his calculation, stating that "                                        "[42] Although Mr. Weinstein

---

[39] Ex. 1 (Weinstein Rep.) at ¶ 197.
[40] *Uniloc*, 632 F.3d at 1314 (internal quotations omitted). *See also ResQNet.com, Inc. v. Lansa, Inc.*, 594 F.3d 860, 869 (Fed. Cir. 2010) ("[T]he trial court must carefully tie proof of damages to the claimed invention's footprint in the market place."); *Daubert*, 509 U.S. at 593 (the trial judge must also determine whether the expert's "reasoning or methodology can be applied to the facts in issue").
[41] Ex. 1 (Weinstein Rep.) at ¶ 197 (footnote text excluded).

provides little explanation for his calculation, based on this paragraph, it appears he took a  This is

nonsensical.  Using Mr. Weinstein's calculation that "███████████████████

█████" would mean that for a battery that last 200 hours, Weinstein's calculation would

result in power savings of 200% of the available battery life.[44]  Not only is this impossible, it

shows the arbitrariness of Mr. Weinstein's calculation.

      Compounding Mr. Weinstein's critical mistake, however, is that calculation—"█

█████████████████████calculates the total power allegedly consumed by

the GPS receiver,[45] but he nevertheless concludes, without explanation, that this represents a

"██████████████████████."[46]  But this is illogical—if the ***total power*** consumed

by the GPS receiver is allegedly 16 percent of the BlackBerry battery's life, then the ***power***

***savings*** attributed to the GPS receiver cannot also be 16 percent unless: (1) the GPS receiver

was never powered on, or (2) the GPS receiver consumed zero power.  Under the first

scenario, there would be no infringement of the '420 patent if the GPS receiver was never

powered on, and the second scenario defies the laws of physics (i.e., a "powerless" GPS

receiver is physically impossible).

---

[42] *Id.* at n.351.
[43] *Id.* at ¶ 197.
[44] Put another way, Mr. Weinstein applied the 16 percent power savings to a $5 battery to calculate a cost savings of $0.80 per battery.  *Id.* at ¶ 198.  Applying a 200% power savings (if it was a battery that lasted 200 hours) for a battery that was $5 would result in a costs savings of $10 on a $5 battery.
[45] This is because the percentage he bases his analysis on—one percent—is a percentage representing ████
████████" by the GPS (████████████████████ *See* Ex. 5, (RIM-NXP_00037989) at RIM-NXP_00038001.  Therefore, by basing his calculation on this percentage, which is a measurement of energy consumption, his calculation of 16 percent is a calculation of energy (or power) consumption.
[46] Ex. 1 (Weinstein Rep.) at ¶ 198.

Mr. Weinstein's error highlights his flawed methodology, his lack of expertise in power savings, and another reason his opinion on the '420 patent should be excluded.[47]

## C. The Court Should Exclude Mr. Weinstein's Alternative Royalty Rate Opinion for the '654 Patent Because it is Speculative and Not Tied to the Facts of This Case.

Mr. Weinstein's alternative royalty rate opinion[48] for the '654 patent fails the second and third elements under *Daubert*: (2) the methodology Mr. Weinstein uses to reach his conclusions is not sufficiently reliable, and (3) Mr. Weinstein's testimony would not assist the trier of fact because he does not apply any scientific, technical, or specialized expertise to understand the evidence or to determine a fact in issue.[49]

The entirety of Mr. Weinstein's analysis for the alternative royalty rate appears to be in Paragraph 208 of his report:



Mr. Weinstein provides no economic analysis regarding why $0.85 per unit is an appropriate royalty rate. This lack of analysis for his "alternative" rate is in stark contrast to his fair, reasonable, and non-discriminatory ("FRAND") royalty rate. For the FRAND royalty rate, Mr. Weinstein includes an appendix with seven pages of analyses and

[47] *See Rink*, 400 F.3d at 1292 ("the methodology by which the expert reaches his conclusions [must be] sufficiently reliable").
[48] While Mr. Weinstein provided two different opinions on damages for the '654 patent, BlackBerry is only asking the alternative royalty rate opinion be excluded.
[49] *See Rink*, 400 F.3d at 1291-92.
[50] Ex. 1 (Weinstein Rep.) at ¶ 208.

calculations,[51] whereas, for the "alternative" royalty rate, Mr. Weinstein never even indicates where or how the "alternative" $0.85 figure was derived. The "alternative" rate is nothing more than Mr. Weinstein's "subjective belief or unsupported speculation."[52]

Moreover, the only factual support Mr. Weinstein cites relating to his "alternative" opinion is an alleged ███████████████████████████████████."[53] Yet, according to Dr. Alpert at his deposition, he does not recall even speaking with Mr. Weinstein.[54] Mr. Weinstein's opinion for his "alternative" royalty rate for the '654 patent is factually grounded solely on an alleged conversation with Dr. Alpert that cannot be verified.

In any event, Dr. Alpert's alleged opinion that the '654 patent allows BlackBerry to support high speed Wi-Fi, HDMI video, streaming video, and interactive games does not provide any quantitative support for his valuation of $0.85 per unit. *Daubert* requires that the trial court exclude such arbitrary "opinions" in its role as gatekeeper. The Court should exclude Mr. Weinstein's alternative royalty rate opinion for the '654 patent.

### D. Mr. Weinstein's Opinion on the '455 Patent Should be Excluded Because He Relies on Incomparable Licenses.

"The testimony of a damages expert in a patent suit who relies on non-comparable licenses in reaching his royalty rate should be excluded."[55] For example, the Federal Circuit has held that a license agreement for multiple patents covering a broad sent of technologies is not probative to the value of a license agreement for a single patent directed to a narrow

---

[51] *See* Ex. 1 (Weinstein Rep.) at ¶ 207; Ex. 6 (Appendix A to Weinstein Rep.).
[52] *Daubert* at 598-90 (1993). It appears Mr. Weinstein's basis for his opinion is merely due to the alleged "the importance of the '654 patent." Ex. 1 (Weinstein Rep.) at ¶ 208.
[53] Ex. 1 (Weinstein Rep.) at n.363.
[54] Ex. 7 (Sep. 10, 2013 Alpert Depo. Tr.), 38:22-39:17.
[55] *Dataquill Ltd. v. High Tech Corp.*, 887 F. Supp. 2d 999, 1022 (S.D. Cal. 2011) (citing *IP Innovation L.L.C. v. Red Hat, Inc.*, 705 F. Supp. 2d 687, 690-91 (E.D. Tex. 2010)).

method related to a user-interface method.[56]  Mr. Weinstein's opinion should be excluded because he relies solely on two licenses that are not comparable—they do not reflect economic circumstances similar to the hypothetical negotiation between NXP and RIM, nor a similar number of patents with similar breadth.[57]

The first license on which Mr. Weinstein purports to rely is a ██████████ ██████████████████  Among other royalties stated in the agreement, ████████ ████████████████████ ████████████████████████████████ ████████████████████,"[59]  The royalty payments covered ████ ████████ ████████████████████████  Based on known public information about ████████████████ that are essential to 802.11,[61] this includes dozens, if not hundreds, of 802.11 essential patents.  Based on this agreement and without any analysis, Mr. Weinstein opines that "████████████████████████████████ ████████████████████████████████[62]



---

[56] *Lucent Techs., Inc. v. Gateway, Inc.*, 580 F.3d 1301, 1328 (Fed. Cir. 2009).
[57] *See* Ex. 1 (Weinstein Rep). at ¶¶ 200-202.
[59] Ex. 8 (RIM-NXP_00272770) at RIM-NXP_00272793.

Ex. 1 (Weinstein Rep.) at ¶ 202.

The second is a broad cross-license between ███████████████ This agreement also included many different types of royalty payments, but Mr. Weinstein focuses on the royalty of ███████████████████████████████████████████████████████████████

███████████████████████████████████████████████████████

████ The ███████████████████████████████████████████████████

██████████████████████████████████ According to some accounts, ████████████

███████████████████████████████ Again, without any analysis, Mr. Weinstein states that he ████████████████████████████████████████████

████████████████████████████████████[66]

Neither of these licenses is comparable. The license from the hypothetical negotiation at issue between BlackBerry and NXP in this case involves a single WLAN 802.11-related patent. The ████████████████████ licenses cover dozens, if not hundreds, of WLAN 802.11-related patents. Despite these vastly different economic circumstances, Mr. Weinstein seemingly splits the difference between ████████████████

████████████████████████████████████████████████████████████████

██████████████████████████ Based on the aforementioned Federal Circuit law, Mr. Weinstein's opinion should be excluded for relying on these licenses that are not comparable to the hypothetical negotiation regarding the '455 patent.

---

[63] Ex. 11, (RIM-NXP_00110406) at RIM-NXP_00110411.



Ex. 1 (Weinstein Rep.) at ¶ 201.

Moreover, established Federal Circuit law requires any comparison of past licenses "must account for 'the technological and economic differences' between them."[67] Without such analysis, NXP cannot meet its burden under Federal Circuit law to rely on these licenses.[68] Mr. Weinstein does neither.[69] Therefore, in addition to relying on non-comparable licenses, Mr. Weinstein's failure to account for the technological and economic differences also renders his opinions unreliable and should be excluded.[70]

## V. DR. KONCHITSKY'S TESTIMONY SHOULD BE EXCLUDED BECAUSE IT IS CONCLUSORY AND THUS CANNOT ASSIST THE TRIER OF FACT

Dr. Alon Konchitsky's expert report on the alleged validity of the '455 patent does not satisfy Rule 26's requirement that it provide "a complete statement of all opinions the witness will express *and the basis and reasons for them*." Rather, Dr. Konchitsky's report is devoid of any basis or reasons for his opinions and instead, provides a handful of conclusory paragraphs stating that various prior art references do not invalidate the asserted patent claims. *Daubert* and the Federal Rules of Evidence require an expert's testimony to assist the trier of fact, which requires factual or analytical support for the expert's opinions.[71] Because Dr. Konchitsky's conclusory report does not satisfy Rule 26's requirement of providing the basis and reasons for his opinions, his proposed testimony cannot assist the trier of fact and should be excluded in its entirety.

---

[67] *Wordtech Sys., Inc. v. Integrated Networks Solutions, Inc.*, 609 F.3d 1308, 1320 (Fed. Cir. 2010) (quoting *ResQNet.com*, 594 F.3d at 873.
[68] *See Lucent Techs.*, 580 F.3d at 1324 ("The burden of proving damages falls on the patentee.").
[69] ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮
[70] *See Wordtech Sys.*, 609 F.3d at 1320.
[71] *See Rink*, 400 F.3d at 1292.

## A. Conclusory Expert Testimony Does Not Assist the Trier of Fact and Should Be Excluded under *Daubert*

*Daubert* requires that proposed expert testimony "assist[] the trier of fact, through the application of scientific, technical, or specialized expertise, to understand the evidence or to determine a fact in issue.'"[72]  NXP bears the burden to satisfy this element, and, under Eleventh Circuit law, "[p]resenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough [to carry this burden]."[73]  "[A] trial court may exclude expert testimony that is 'imprecise and unspecific,' or whose factual basis is not adequately explained."[74]  "[A]n expert's failure to explain the basis for an important inference mandates exclusion of his or her opinion."[75]

## B. Dr. Konchitsky's Validity Opinions on the '455 Patent Should be Excluded Because They Are Conclusory and Provide No Factual Background or Analysis.

Dr. Konchitsky's validity report on the '455 patent is devoid of factual support and analysis.  The deficiencies in Dr. Konchitsky's opinions are best illustrated by his treatment of the prior art versions of the 802.11 standard, which BlackBerry's expert, Dr. Chris

---

[72] *Id.* at 1291-92 (citations omitted).

[73] *Cook ex rel. Estate of Tessier v. Sheriff of Monroe Cty., Fla.*, 402 F.3d 1092, 1113 (11th Cir. 2005).  *See also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("[N]othing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence which is connected to existing data only by the *ipse dixit* of the expert.").

[74] *Id.* at 1111 (quoting *United States v. Frazier*, 387 F.3d 1244, 1266 (11th Cir. 2004)).

[75] *Hudgens v. Bell Helicopters/Textron*, 328 F.3d 1329, 1344 (11th Cir. 2003). To pass muster under *Daubert*, more is required then "simply taking the expert's word for it."  *McClain v. Metabolife Int'l, Inc.*, 401 F.3d 1233, 1244 (11th Cir. 2005).  And in the patent context, the Federal Circuit has repeatedly chastised and discredited expert testimony for providing conclusory opinions.  *Krippelz v. Ford Motor Co.*, 667 F.3d 1261, 1269 (Fed. Cir. 2012) ("His generic statements that the 'conical' limitation was unmet were therefore too conclusory to sustain the jury's verdict."); *Phillips Petroleum Co. v. Huntsman Polymers Corp.*, 157 F.3d 866, 876 (Fed. Cir. 1998) ("We agree with the Special Master's conclusion that the expert declarations are 'wholly conclusory, devoid of facts upon which the affiant[s'] conclusions, as experts, were reached.'").  "Conclusory expert reports … violate both the rules and principles of discovery, and the obligations lawyers have to the court.  Exclusion and forfeiture are appropriate consequences to avoid repeated occurrences of such manipulation of the litigation process."  *Innogenetics, N.V. v. Abbott Labs.*, 512 F.3d 1363, 1376 n. 4 (Fed. Cir. 2008).

Heegard, contends invalidate the asserted patent claims.[76]  Dr. Konchitsky's report states that

he disagrees with Dr. Heegard's thirty-five page analysis.[77]  As Dr. Konchitsky agreed at

deposition, he provides only two paragraphs in response, and the first is merely a summary of

the prior art references at issue.[78]  His entire analysis is contained in his second paragraph:



     Dr. Konchitsky cites to no facts or evidence to support his conclusion other than

stating that a skilled artisan would not ████████████████████████████████████

████████████████████████  Dr. Konchitsky does not explain what a person of ordinary

skill in the art would understand the claimed "second data transmission rule" to be or why

that is so.  He does not even address the portions of the prior art references that Dr. Heegard

opines disclose the claim elements.  Dr. Konchitsky's conclusions are unfounded and

untestable.  Dr. Konchitsky's conclusion begs for explanation, and none is given—which he

admits:

---

[76] *See* Ex. 13 (Konchitsky Rep.) at ¶ 38-39.
[77] *Id.* (disagreeing with Dr. Heegard's opinion).
[78] Ex. 14 (Konchitsky Depo. Tr.) at 190:18-25 (████████████████████████████████████
██████████████████████████████████████████████████████████ ").
  Ex. 13 (Konchitsky Rep.) at ¶ 39.



Dr. Konchitsky's analyses of the other prior art references are no better.  His

discussion of the remaining four primary prior art references cites not a single piece of

evidence beyond the references themselves nor does it detail the basis and reasons for his

conclusory opinions.[81]  He merely states his ultimate opinions—that he believes the prior art

does not disclose the claimed inventions.[82]  For example, with respect to the Fischer

reference, Dr. Konchitsky states only that the claimed "second data transmission rule" is

---

[80] Ex. 14 (Konchitsky Depo. Tr.) 203:25-208:11 (attorney colloquy omitted).
[81] Ex. 13 (Konchitsky Rep.) at ¶¶ 40-49; *see also* Ex. 14 (Konchitsky Depo. Tr.) at 214:2-17.
[82] The insufficiency of Dr. Konchitsky's analysis is underscored when juxtaposed with NXP's other expert's
rebuttal reports that at least included some details on the bases of their analyses:  90 pages in the case of Dr.
Smith (Ex. 15), 111 pages in the case of Dr. Alpert's rebuttal report on the '654 patent validity (Ex. 16), and
114 pages in the case of Dr. Alpert's rebuttal report on the '420 patent validity (Ex. 17).

missing because Fischer allegedly related to a different problem than the one on which the

inventors were supposedly focused. But, Dr. Konchitsky does not explain *how* those

problems allegedly differ—we are simply asked to take his word for it:



An expert's testimony must "assist[] the trier of fact, through the application of

scientific, technical, or specialized expertise, to understand the evidence or to determine a

fact in issue.'"[84] To do so, the expert's report must comply with Rule 26's requirement to

provide the basis and reasons for his or her opinions. Dr. Konchitsky's report and opinions

fail to do so, and therefore BlackBerry requests the Court exclude his offered opinions.

## VI.    DR. SMITH'S OPINIONS PERTAINING TO HYNIX, SANDISK, AND QUALCOMM CHIPS AND HIS OPINIONS RELATED TO SECONDARY CONSIDERATIONS SHOULD BE EXCLUDED IN THEIR ENTIRETY

### A.    Dr. Smith's opinions relating to Hynix, SanDisk and Qualcomm Chips should be excluded, consistent with the Court's prior Order, because those opinions lack sufficient factual foundation and analysis.

The Court has already held that Dr. Smith's opinions and analysis regarding the

accused SanDisk, Hynix, and Qualcomm components fall short of the requirements for

---

[83] Ex. 14 (Konchitsky Dep.) 219:20-220:24.
[84] *Rink v. Cheminova, Inc.*, 400 F.3d 1286, 1291-92 (11th Cir. 2005) (citing *Daubert*, 509 U.S. at 589).

expert witness reports under Rule 26 and for testimony under Rule 702 of the Federal Rules of Evidence.[85]  Specifically, the Court ordered that "Dr. Smith's expert witness opinions for which no analysis was provided prior to the deadline for disclosure of initial expert reports are excluded."[86]  NXP has taken the position that this order applies *only* to paragraph 184 of the Smith report, which was the "placeholder" paragraph Dr. Smith included for his apparent future analysis.[87]  In an abundance of caution, BlackBerry files this *Daubert* motion to exclude the entirety of Dr. Smith's opinions on the SanDisk, Hynix, and Qualcomm components—as BlackBerry believes is appropriate given the Court's Order.[88]

The reality is that Dr. Smith did not perform the proper analysis during the timeframe required for him to submit his expert report based on the Court's case schedule.  Because even he and NXP recognized that failing, he added a placeholder paragraph that attempted preserve his right to later add his real analysis when and if he actually performed it.[89]  Now that the Court has struck that placeholder and precluded Dr. Smith from supplementing with his late analysis,[90] NXP is attempting to conjure *ex post* from the rest of his report any analysis that might support Dr. Smith's conclusory infringement allegations as to the SanDisk, Hynix, and Qualcomm components.  But what remains is undoubtedly insufficient.

Tellingly, in analyzing the TriQuint device (more specifically, the accused ON Semiconductor component within the TriQuint device), Dr. Smith relies on ***39 separate***

---

[85] Order, Doc. 157 at 25:23-24.

[86] *Id.* at 26:2-6

[87] Ex. 18, Email from DeMory to Graubart, 10/03/2013 ("we believe that Dr. Smith can offer opinions relating to the analysis contained in his report with regard to those entities, which is largely comprised of his reliance on our infringement contentions.").

[88] This includes testimony as to both U.S. Patent. Nos. 5,639,697 and 5,597,668.

[89] *See* Ex. 19 (Smith Rep.) at ¶ 184.

[90] Doc. 157 at 26:2-6.

***internal documents*** produced by ON Semiconductor, as well as the deposition testimony of Paul Streva, ON Semiconductor's Director of the Mixed Signal ASIC Business Unit.[91]  Dr. Smith relies on nothing comparable for SanDisk, Hynix, and Qualcomm components. Consequently, Dr. Smith's opinions regarding these chips are not based on sufficient facts or data and are not the product of reliable principles and methods, as required by *Daubert*.

At best, NXP may argue that Dr. Smith's opinions for the accused SanDisk, Hynix and Qualcomm components are still sufficient based on:  (1) conclusory statements that Dr. Smith's analysis of one chip—the accused TriQuint chip—also applies to these other chips; (2) support from claim charts generated by NXP's counsel that contain indiscernible micrographic images; and (3) Dr. Smith's experience.  But NXP is wrong.

First, Dr. Smith cannot simply perform an "exemplary infringement analysis" on a disassociated TriQuint component and then summarily conclude that the analysis would be the same as the ***other*** accused components provided to BlackBerry by third parties SanDisk, Hynix and Qualcomm—which are entirely different companies.[92]  The patentee bears the burden of proving infringement as to ***each*** accused device.[93]  Moreover, Dr. Smith admits that he cannot even make conclusive determinations regarding the methods used in fabricating a chip based on the information he had available to him (micrographic images of the chip)—let alone from looking at information on chips from other companies and manufacturers.[94]

---

[91] *See* Ex. 20, (Appendix B, "Materials Relied Upon", Smith Rep.).
[92] *See* Ex. 19 (Smith Rep.) at ¶¶ 140, 142, 153, 156, 157, 166, 168, 169 and 172.
[93] *L & W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1318 (Fed. Cir. 2006) ("[patentee] cannot simply 'assume' that all of [a single defendant's] products are like the one Dr. Holmes tested and thereby shift to L & W the burden to show that is not the case.").
[94] Ex. 22, (Smith Depo. Tr.) at 193:12-195:9, 197:13-200:6, 238:7-25.

Second, Dr. Smith cannot properly offer opinions based on the claim charts generated by NXP's counsel. These claim charts contain attorney-drafted argument and indiscernible micrographic images, the source of which is unknown to NanoSpective (the laboratory alleged to have prepared the images)[95] and even to Dr. Smith.[96] In addition to the images' unreliability, Dr. Smith's report does not identify any specific image of these allegedly infringing components on which he bases his conclusory opinions.[97] Dr. Smith's report also does not include any analysis explaining how his method is based on those images. Nor does he describe any analysis he conducted tying any specific image in those contentions to a specific accused product or asserted claim element. As the Federal Circuit recently stated, "while an expert's data need not be admissible, the data cannot be derived from a manifestly unreliable source."[98] Expert opinion must be excluded where "there is simply too great an analytical gap between the data and the opinion proffered."[99] Here, where the source of the images is unknown, the images themselves are indiscernible, and Dr. Smith does nothing to try and tie them together, the result is an analytical chasm between the data and the opinions proffered, which requires the opinions' exclusion.

Finally, Dr. Smith's purported experience[100] does not salvage his unsubstantiated opinion. The advisory committee notes for Federal Rule of Evidence 702, citing to *Daubert*, state that "[i]f the witness is relying solely or primarily on experience, then the witness must

---

[95] Ex. 21, (Prenitzer, Depo. Tr.) at 115:18-116:7, 116:16-117:16 and 72:22-73:22 (admitting inability to identify source of images).
[96] Ex. 22 (Smith Depo. Tr.) at 16:19-17:2, 18:13-21, 117:3-25, 119:17-120:16, 123:2-124:13 (admitting no personal knowledge of reverse-engineering images).
[97] Ex. 19 (Smith Rep.) at ¶¶ 89, 137.
[98] *Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, 711 F.3d 1348, 1373 (Fed. Cir. 2013).
[99] *General Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997).
[100] Ex. 19 (Smith Rep.) at ¶¶ 89, 137.

explain how that experience leads to the conclusion reached, why the experience is a sufficient basis for the opinion, and how that experience is reliably applied to the facts."  Dr. Smith has not done so for the Hynix, SanDisk, and Qualcomm components.  Thus, Dr. Smith's supposed reliance on his own experience—without further explanation—is simply not a permissible basis on which to base opinion testimony on alleged infringement.

"Presenting a summary of a proffered expert's testimony in the form of conclusory statements devoid of factual or analytical support is simply not enough."[101]  *Daubert* directs the Court to determine whether an expert has used a reliable methodology.  Bald assertions by an expert are not sufficient.[102]  The opinions and analysis expressed by Dr. Smith in his infringement report regarding the accused Hynix, SanDisk, and Qualcomm components consist of nothing more than the type of *ipse dixit* statements previously rejected by the Eleventh Circuit in *Cook*[103] and by this Court in *Rembrandt*.[104]

As such, the Court should exclude those portions of Dr. Smith's report, and preclude any related trial testimony under Rule 702.

**B.**     **Dr. Smith's opinions as to secondary considerations should also be excluded because he does not show the required nexus to the patents' claims**

Dr. Smith's rebuttal expert report on the alleged validity of the '668 and '697 patents includes only cursory discussion of two alleged secondary considerations:  "copying of the invention" and "long felt need for the patented technology."[105]  Because neither opinion is

---

[101] *Ex rel. Estate of Tessier,* 402 F.3d at 1113 (11th Cir. 2005).
[102] *Rembrandt Vision Technologies, L.P. v. Johnson & Johnson Vision Care, Inc.*, 282 F.R.D. 655, 666 (M.D. Fla. 2012).
[103] *See Ex. rel. Estate of Tessier*, 402 F.3d at 1113-14.
[104] *See Rembrandt*, 282 F.R.D. at 666.
[105] Ex. 15 (Rebuttal Rep. of Bruce Smith) at ¶¶ 240-251.

supported by evidence demonstrating the required nexus to the patents' claims, Dr. Smith

should be precluded from testifying regarding these secondary considerations.

An invention that would have been obvious to a person of ordinary skill at the time of

the invention is not patentable.[106]  When attempting to rebut obviousness allegations,

patentees sometimes offer evidence of so-called "secondary considerations of non-

obviousness," such as a patented product's commercial success.[107]  Here, BlackBerry bears

the ultimate burden of persuasion on obviousness, but NXP bears "the burden of production

with regard to secondary consideration evidence."[108]  To meet this burden, NXP must present

"objective evidence of non-obviousness [] commensurate in scope with the claims which the

evidence is offered to support."[109]  NXP must show "that a nexus exists between the claimed

features of the invention and the objective evidence offered to show non-obviousness."[110]

Consequently, "[w]here the offered secondary consideration actually results from something

other than what is both claimed and novel in the claim, there is no nexus to the merits of the

claimed invention."[111]

Dr. Smith's opinions are legally insufficient as to "copying," which is one secondary

consideration of nonobviousness.  The Federal Circuit has explained that evidence of

"copying" can only be relevant to obviousness where the patentee shows copying of a

specific product:

---

[106] *See* 35 U.S.C. § 103(a).
[107] *Graham v. John Deere Co. of Kansas City*, 383 U.S. 1, 17-18 (1966).   These secondary considerations are also sometimes called "objective indicia" of non-obviousness.
[108] *TQP Dev., LLC v. Merrill Lynch & Co., Inc.*, No. 2:08-CV-471, 2012 WL 3283356, at *3 (E.D. Tex. Aug. 10, 2012) (citing, *e.g.*, *Ecolochem, Inc. v. S. Cal. Edison Co.*, 227 F.3d 1361, 1376 (Fed. Cir. 2000)).
[109] *Asyst Techs., Inc. v. Emtrak, Inc.*, 544 F.3d 1310, 1316 (Fed. Cir. 2008) (internal citations and quotations omitted).
[110] *WMS Gaming, Inc. v. Int'l Game Tech.*, 184 F.3d 1339, 1359 (Fed. Cir. 1999).
[111] *In re Huai-Hung Kao*, 639 F.3d 1057, 1068 (Fed. Cir. 2011).

> [*C*]*opying requires evidence of efforts to replicate a specific product*, which may be demonstrated through internal company documents, direct evidence such as disassembling a patented prototype, photographing its features, and using the photograph as a blueprint to build a replica, or access to the patented product combined with substantial similarity to the patented product.[112]

In contrast, Dr. Smith merely alleges that ███████████████████████

████████████████████████████████████████████████████████

█████████████████████[13]  Put another way, Dr. Smith's opinion is that, because he alleges infringement, there must have been copying.  Dr. Smith admitted in deposition that he had no actual evidence of copying by BlackBerry or any other company—*i.e.,* no evidence of efforts to replicate a specific product or method.[114]  To him, "copying" just means alleged infringement.[115]

Dr. Smith's discussion of "long felt need" fares no better.  As to the '668 patent, Dr. Smith contends a long felt need existed, based on two technical articles regarding "efficient and automated design for automation (DFM) algorithms."[116]  However, Dr. Smith also states that the '668 asserted claims are ***not*** directed to automated methods:



Consequently, Dr. Smith offers no nexus between the alleged need for ***automated*** design algorithms and the asserted '668 patent claims.[118]  So too with respect to the '697

[112] *Wyers v. Master Lock Co.*, 616 F.3d 1231, 1246 (Fed. Cir. 2010).
[113] Ex. 15 (Rebuttal Rep. of Bruce Smith) at ¶ 240.
[114] Ex. 22 (Smith Depo. Tr.) at 217:11-221:8.
[115] *Id.* at 218:13-17.
[116] Ex. 15 (Rebuttal Rep. of Bruce Smith) at ¶ 242.
[117] Ex. 22 (Smith Depo. Tr.) at 133:13-22.

patent. The only evidence Dr. Smith cites is an article published in 2008.[119] This article, published 12 years *after* the 1996 filing date of the '697 patent, demonstrates nothing about any "long felt need" for the '697 methods before 1996. In fact, Dr. Smith only describes the article as related to "device generations in 2008 timeframe," meaning it has no relevance to any "long felt need" prior to the alleged invention in 1996.[120] The Court should thus preclude Dr. Smith from offering evidence or testimony regarding either "copying" or "long felt need" as alleged secondary considerations of non-obviousness of the '668 and '697 patents.

## VII.    CONCLUSION

For the reasons stated herein, BlackBerry respectfully requests the Court exclude the identified portions of the testimony of Mr. Weinstein and Dr. Smith, and the testimony of Dr. Konchitsky in its entirety.

Respectfully submitted this 28th day of October, 2013.

/s/ Rex A. Mann
RICHARD E. MITCHELL, ESQ.
Florida Bar No.: 0168092
rick.mitchell@gray-robinson.com
GRAYROBINSON, P.A.
301 E. Pine Street, Suite 1400
Post Office Box 3068
Orlando, Florida 32802-3068
(407) 843-8880  Telephone
(407) 244-5690  Facsimile

---

[118] *In re Huai-Hung Kao*, 639 F.3d 1057, 1068 (Fed. Cir. 2011) ("Where the offered secondary consideration actually results from something other than what is both claimed and novel in the claim, there is no nexus to the merits of the claimed invention.").
[119] Ex. 15 (Rebuttal Rep. of Bruce Smith) at ¶ 251.
[120] *Id.*

*Local Counsel for Defendants*
*Research In Motion Limited and*
*Research In Motion Corporation*

– and –

THOMAS M. MELSHEIMER, ESQ.
*(Admitted Pro Hac Vice)*
Texas Bar No.: 13922550
melsheimer@fr.com
THOMAS H. REGER II, ESQ.
*(Admitted Pro Hac Vice)*
Texas Bar No.: 24032992
reger@fr.com
ROBERT C. EARLE, ESQ.
*(Admitted Pro Hac Vice)*
Texas Bar No.: 24002029
earle@fr.com
REX A. MANN, ESQ.
*(Admitted Pro Hac Vice)*
Texas Bar No.: 24075509
mann@fr.com
FISH & RICHARDSON P.C.
1717 Main Street, Suite 5000
Dallas, Texas 75201
(214) 747-5070  Telephone
(214) 747-2091  Facsimile
*Lead Trial Counsel for Defendants*
*BlackBerry Limited and*
*BlackBerry Corporation*

– and –

NOAH C. GRAUBART, ESQ.
*(Admitted Pro Hac Vice)*
Georgia Bar No.: 141862
graubart@fr.com
FISH & RICHARDSON P.C.
1180 Peachtree Street NE, 21st Floor
Atlanta, Georgia 30309
(404) 892-5005  Telephone
(404) 892-5002  Facsimile

*Lead Trial Counsel for Defendants*
*BlackBerry Limited and*
*BlackBerry Corporation*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 28th day of October, 2013, I electronically filed the foregoing with the Clerk of the Courts by using the ECF system.

_/s/ Rex A. Mann_
Noah C. Graubart

**EXHIBIT INDEX TO BLACKBERRY'S MOTION TO EXCLUDE TESTIMONY OF NXP'S EXPERTS MR. ROY WEINSTEIN, DR. ALON KONCHITSKY, AND DR. BRUCE W. SMITH**

Exhibits denoted by a "*" have been designated confidential under the Protective Order (Dkt. No. 100). BlackBerry intends to promptly move the Court for permission to file these exhibits under seal.

| Exhibit | CM/ECF Dkt. No. | Description |
|---|---|---|
|  | 201 | Declaration of Rex Mann in Support of BlackBerry's Motion to Exclude Testimony of NXP's Experts Mr. Roy Weinstein, Dr. Alon Konchitsky, and Dr. Bruce W. Smith. |
| 1* | 201-1 | Expert Report of Roy Weinstein |
| 2 | 201-2 | *Suffolk Tech. LLC v. AOL, Inc.*, Dkt. No. 518 |
| 3* | 201-3 | Roy Weinstein's CV attached to his report |
| 4* | 201-4 | September 11, 2013 Deposition of Dr. Donald Alpert |
| 5* | 201-5 | Document produced as RIM-NXP_00037989 |
| 6* | 201-6 | Appendix A to the report of Roy Weinstein |
| 7* | 201-7 | September 10, 2013 Deposition of Dr. Donald Alpert |
| 8* | 201-8 | Document produced as RIM-NXP_00272770 |
| 9 | 201-9 | Document produced as NXP_A-00044174 |
| 10 | 201-10 | Printout from IEEE Standards Association Website |
| 11* | 201-11 | Document produced as RIM-NXP_00110406 |
| 12 | 201-12 | Article titled "Ericsson Eyes Sales from Mobile Industry's |

| | | Top Patents Trove" |
|---|---|---|
| 13* | 201-13 | Expert Report of Dr. Alon Konchitsky regarding the Validity of U.S. Patent No. 7,330,445 |
| 14* | 201-14 | September 12, 2013 Deposition of Dr. Alon Konchitsky |
| 15 | 201-15 | Rebuttal Expert Report of Bruce Smith, Ph.D. Concerning Validity of U.S. Patents 5,597,668 & 5,639,697 |
| 16 | 201-16 | Rebuttal Expert Report of Donald Alpert, Ph.D. Concerning Validity of U.S. Patent No. 6,434,654 |
| 17 | 201-17 | Rebuttal Expert Report of Donald Alpert, Ph.D. Concerning Validity of U.S. Patent 6,501,420 |
| 18 | 201-18 | October 3, 2013 Email form De Mory to Graubart |
| 19* | 201-19 | Expert Report of Bruce Smith, Ph.D. Regarding Infringement of U.S. Patents 5,597,668 & 5,639,397 |
| 20* | 201-20 | Appendix B to Bruce W. Smith's Expert Report |
| 21* | 201-21 | May 8, 2013 Deposition of Brenda Prenitzer |
| 22* | 201-22 | October 4, 2013 Deposition of Bruce Smith |
| 23 | 201-23 | *SimpleAir, Inc. v. AWS Convergence Techs., Inc.*, Dkt. No. 507 |
| 24 | 201-24 | *Summit 6 LLC v. Research In Motion Corporation et al*, Dkt. No. 661. |