**IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION**

| | | |
|---|---|---|
| **NXP B.V.,** | ) | |
| | ) | **Case No. 6:12-cv-498-ACC-TBS** |
| **Plaintiff,** | ) | |
| | ) | |
| **vs.** | ) | **JURY TRIAL DEMANDED** |
| | ) | |
| **BLACKBERRY, LTD. and** | ) | **[REDACTED PUBLIC COPY]** |
| **BLACKBERRY, CORP.,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## PLAINTIFF NXP B.V.'S OMNIBUS MOTION *IN LIMINE*

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ................................................................................................1

    A.    BlackBerry Should Be Precluded From Arguing That
        NXP's Infringement Analysis Does Not Apply Equally
        To All Accused Products ....................................................................................1

        1.    BlackBerry Failed To Identify Source Code In Its
                Initial Disclosures .........................................................................2

        1.    BlackBerry Significantly Delayed Producing
                Source Code, Only Making A Useful Production
                Seven Days Before NXP's Expert Reports Were
                Due .................................................................................................4

        2.    BlackBerry Did Not Produce Its Code As It is
                Kept In The Ordinary Course Of Business ...............................7

        3.    BlackBerry Refused To Answer An Interrogatory
                Regarding Code Differences.........................................................8

        4.    BlackBerry Should Not Be Allowed To Argue
                Differences It Made Impossible To Analyze ..............................9

    B.    BlackBerry's Experts Should Be Precluded From
        Relying On Conversations With Employees Not
        Disclosed In Rule 26 Disclosures .........................................................11

    C.    BlackBerry Should Be Precluded From Offering Printed
        Publication Evidence Not Disclosed In Expert Reports
        Or Produced In Discovery ......................................................................14

    D.    BlackBerry Should Be Precluded From Relying On
        Conversations With Michael Fischer And Matthew
        Shoemake ..................................................................................................15

    E.    BlackBerry Should Be Precluded From Offering Any
        Defense Based On RAND/FRAND Obligations ...................................16

    F.    BlackBerry Should Be Precluded From Offering Any
        Testimony, Including Expert Testimony, Outside the
        Scope of Testimony Given In Its 30(b)(6) Depositions........................17

G.    BlackBerry Should Be Precluded From Making Any
      Reference To The Pending *Inter Partes* Review
      Proceedings ................................................................................................22

H.    BlackBerry Should Be Precluded From Offering
      Testimony Or Arguments About NXP's Motivation For
      Filing Suit..................................................................................................23

I.    BlackBerry Should Be Precluded From Making Any
      Reference To Its Current Financial Status ..............................................24

J.    BlackBerry Should Be Precluded From Making Any
      Reference To NXP As A Non Practicing Entity As To
      The Patents-in-Suit....................................................................................25

## I.    INTRODUCTION

Plaintiff, NXP B.V. ("NXP"), respectfully requests that the Court preclude BlackBerry from introducing at trial, whether by attorney argument or questioning, direct testimony, or seeking to admit evidence, the following because of either BlackBerry's failure to meet its discovery obligations under at least Rules 26, 33 and 34, or because the probative value of such information is substantially outweighed by a danger of unfair prejudice, confusing the issues, and misleading the jury, or it is irrelevant.

### A.    BlackBerry Should Be Precluded From Arguing That NXP's Infringement Analysis Does Not Apply Equally To All Accused Products

NXP respectfully requests that the Court preclude BlackBerry from arguing, questioning witnesses, including experts, or otherwise introducing evidence that implies or, suggests that the analysis of BlackBerry's source code by NXP's expert witnesses is not applicable to each and every BlackBerry Accused Product.  BlackBerry's experts should be precluded from testifying regarding the statements in their expert reports that NXP's expert Dr. Alpert "does not provide enough detail with regard to the version of the . . . source code he inspected"[1] or "does not cite any specific evidence to show that his analysis regarding the [Representative Accused Products] applies to any other BlackBerry product."[2]  Because BlackBerry refused to provide information that it has readily available regarding differences between versions of its code and because BlackBerry produced code that differentiated between versions too late to be meaningfully available to NXP's experts, BlackBerry should be precluded from making any such arguments.

---

[1] *See* Declaration of Denise M. De Mory in Support of NXP's Motion *in Limine* (hereinafter "De Mory Decl."). All exhibits are to the De Mory Declaration.  8/23/13 Expert Report of William Michalson Re: Non-Infringement of U.S. Patent No. 6,501,420 (hereinafter "Michalson Rebuttal Report") ¶¶ 65, 99 (Ex. 1).

[2] *See* 8/23/13 Expert Report of Brian Berg Re: Non-Infringement of U.S. Patent No. 6,434,654 (hereinafter "Berg Rebuttal Report") ¶ 54 (Ex. 2.

### 1.    BlackBerry Failed To Identify Source Code In Its Initial Disclosures

NXP accuses the BlackBerry Pearl, Curve, Bold, Storm, Tour, Torch, Playbook, Q10 and Z10 families of products of infringement.  NXP asserts that each of these product families uses the features implicated by NXP's patents that are not model number or build dependent.  Each of the Accused Products (1) uses ███████████████████ ████████████████████████████████████████████████ ██████████████████████████████████████████████ which infringes U.S. Patent No. 6,434,654 (the "'654 Patent"); (2) a GPS receiver that is ████████████████████████████████████████████ which infringes U.S. Patent No. 6,501,420 (the "'420 Patent"); or (3) IEEE 802.11(g) compliant WiFi functionality within the phone, which infringes U.S. Patent No. 7,330,455 ("the '455 Patent"). Prior to filing the case, NXP provided BlackBerry with claim charts outlining its infringement claims with regard to the '420 and '455 patents.[3]

Federal Rule of Civil Procedure 26(a) requires a party to identify all witnesses and documents on which it intends to rely to support any claim or defense.[4]  Blackberry timely served its Rule 26(a) Initial Disclosures on August 31, 2012.  With regard to documents on which it intended to rely to support its case, BlackBerry identified the following, in addition to the accused products themselves:

> Documents regarding the design, development, configuration, manufacturing, and operation of the accused products.[5]

---

[3] Claim Chart for U.S. Pat. No. 6,501,420 (Ex. 3).

[4] Fed. R. Civ. P. 26(a).

[5] 8/1/12 RIM's Initial Disclosures (Ex.4) at 9.

On August 12, 2012, NXP served its first set of document requests.[6]  Those requests defined "Documents" as having the broadest interpretation available under the Federal Rules of Civil Procedure.[7]  In view of BlackBerry's Rule 26 Disclosures," NXP included the following request:

> Document Request No. 6:  All documents and things, including, but not limited to: user and/or operational manuals, product brochures, engineering and product specifications, drawings, schematics, engineering change orders, component lists, contemplated uses, and other RIM created documents or things that refer or relate to *the design, structure, development, testing, manufacture, assembly, acquisition or operation, modification, or proposals* for the Accused Products.[8]

Notwithstanding this request, which largely mirrored, but was even more comprehensive than, the documents on which BlackBerry said it would rely on in its initial disclosures, between August 2012 and January 2013, BlackBerry did nothing to collect its source code.  When NXP inquired about the whereabouts of BlackBerry's source code production in January of 2013, BlackBerry claimed that NXP's document requests, which parroted BlackBerry's initial disclosure language, did not request source code.[9] Indeed, BlackBerry argued to this Court that NXP's Document Requests, including Request 6 above,

---

[6] 8/14/12 NXP B.V.'s First Set of Requests for the Production of Documents and Things to RIM (Ex. 5).
[7] *Id.* at 4-5. Documents was defined as broadly as possible without regard to types of documents (i.e., spreadsheets, presentations, manuals, source code) as:

> The term "document" is used herein in its broadest sense under Federal Rule of Civil Procedure 34 and applicable case law and includes all tangible things, all originals . . ., all non-identical copies of a document, all drafts of final documents, all other written, printed, or recorded matter of any kind,  . . . regardless of the medium on which they are produced, reproduced or stored (including without limitation computer programs and files containing any requested information), including, but not limited to,. . . information recorded electronically (e.g., in emails; on computer servers, hard drives, disks or tapes; on audio disks or tapes), . . .

[8] *Id.* at 10 (emphasis added).

[9] 1/30/13 Letter from N. Graubart to De Mory (Ex. 7); 2/19/13 Letter from N. Graubart to D. De Mory (Ex. 8) Because of BlackBerry's assertions, NXP served a Second Set of Requests for Documents on January 31, 2013 that "specifically" mentioned source code.

"*never* specifically requested source code. . . ."[10]  BlackBerry took this position in this case in deviation from its standard practice.  BlackBerry's 30(b)(6) deponent on document collection testified that BlackBerry's standard practice is to interpret "documents" to include "source code" in other cases.[11]  He also testified it would take approximately two weeks to replicate an entire copy of BlackBerry's source code repository.[12]

    1.    **BlackBerry Significantly Delayed Producing Source Code, Only Making A Useful Production Seven Days Before NXP's Expert Reports Were Due**

NXP *first* received access to BlackBerry's source code production ("Volume 1") on April 16, 2013.[13]  The source code review environment consisted of a client computer with Perforce client software that was connected to a Perforce source code server.[14]  With respect to the review process, NXP had direct access to the client computer only; BlackBerry made its source code available on the client review computer via a network link.[15]  Although BlackBerry indicated that this was an "interim" server because it was not up-to-date, Volume 1 included an extensive source code repository, with file paths that matched to the paths that were shown in in various BlackBerry technical documents.[16]  This repository, however, did not appear to correlate the source code collection with BlackBerry's handsets absent further direction or information from Blackberry.[17]

---

[10] 6/7/13 RIM's Response to CSR Technology Inc.'s Motion for Protective Order (Doc. 105 at 2-3) (emphasis added).

[11] 7/16/13 Serrat Dep. Tr. at 107:24-111:18 (Ex. 9.

[12] *Id.* at 82:19-83:7, 83:22-84:3, 118:10-21 (Ex.9).  Mr. Serratt testified that BlackBerry maintains two repositories: one for its handset products, and the other for its backend server software.  NXP was never interested in BlackBerry's backend software.

[13] 4/15/13 Email from C. Win to N. Graubart (Ex. 10) at 3

[14] McNall Decl. ¶ 3.

[15] McNall Decl. ¶ 3.

[16] McNall Decl. ¶ 4

[17] McNall Decl. ¶ 5.

Thereafter, in mid- to late-April, BlackBerry made additional files available through a network share drive ("Volume 2").[18]  This share point initially included some BlackBerry 10 source code and a directory entitled ██████████████████████████  ███████████████ ████████████████████████████████████████████████████████████ ██████████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ████████████████████████████████████  ████████████████████████ ████████████████████████████████  ██████████████████████████████ ██████████████████████████████████████████████████████████████████ ████████████████████████  █████████████████████████████████████████ ████████████████████

On May 2, 2013, with no prior notice to NXP, BlackBerry made a new Perforce server, which it called a "final" production server, available "Volume 3").[25] At the same time, BlackBerry removed Volume 1.[26]  BlackBerry's "final" production server, was replete

---

[18] McNall Decl. ¶ 6.

[19] Kristen McNall Declaration in Support of NXP B.V.'s Motion *in Limine* (hereinafter "McNall Decl.) Decl. ¶ 6.

[20] McNall Decl. ¶ 6.

[21] McNall Decl. ¶ 7.

[22] McNall Decl. ¶ 7.

[23] McNall Decl. ¶ 7.

[24] McNall Decl. ¶ 7.

[25] This production was far from the "final" production BlackBerry represented it to be.  Instead, third party code was withheld.  (*See* Doc. No. 103).  Moreover, missing files continued to be produced at depositions and even up through well after NXP's expert reports were done.  Naryanan Dep. Tr. at 175:24-176:13 (Ex. 11); 8/15/13 Letter from De Mory to Graubart (Ex. 12); 8/19/13 Email from Graubart to Counsel (Ex. 13).

[26] BlackBerry attempted to remove the client machine that NXP had been using for review that contained NXP's work product.  NXP intervened to prevent the removal of the workstation and its work product.

with problems.[27]  Volume 3 was comprised of a crippled Perforce repository that was far removed from what BlackBerry maintained in the ordinary course of business.[28]  First, file paths in this repository did not match the paths in either BlackBerry's documents or mapping files.[29]  Second, many files referenced in BlackBerry documents were no longer available at all.[30]  Third, Volume 3 contained only a snapshot of BlackBerry's source code, providing only one version ███████████████████ ) of nearly all of the files that were inspected or analyzed.[31]  Fourth, all change logs, revision histories, branches, comments, etc., had been removed from the Perforce repository.[32]  Therefore, it was impossible to determine whether any file had been revised, who did what to which file when, or the relationships between different versions of a file.[33]

Depositions began in late May and continued through early July.  NXP's experts and consultants spent hundreds of hours analyzing the source code that was produced in early May.  The source code computer was shipped from deposition to deposition so that BlackBerry employees could be questioned about the BlackBerry code.  After all of this was complete, on July 10, 2013 — seven days before NXP's opening expert reports were due but in plenty of time for BlackBerry's own experts to use it  — BlackBerry added another drive ("Volume 4").[34]  This added ***10.6 million files*** in 1.1 million folders, comprising 647GB of information.[35]  BlackBerry indicated that this production largely reproduced the Perforce

---

[27] McNall Decl. ¶ 8.

[28] McNall Decl. ¶¶ 9-11.

[29] McNall Decl. ¶¶ 9-11.

[30] McNall Decl. ¶¶ 9-11.

[31] McNall Decl. ¶¶ 9-11.

[32] McNall Decl. ¶ 12.

[33] McNall Decl. ¶¶ 9-10.

[34] McNall Decl. ¶ 13.

[35] McNall Decl. ¶ 13.

repository, but in a different format and including versioning information.[36] ██████████

████████████████████████████████████████████████████████████████

███████████████████.[37]

### 2.    BlackBerry Did Not Produce Its Code As It is Kept In The Ordinary Course Of Business

In the ordinary course of BlackBerry's business, source code is methodically

cataloged and tracked using ████████████████████████████████████

████████████████████████████████████ of source code files, how

those files are related, and information concerning changes made to the code files (including

when they were changed, by whom, and notes regarding the change).[38] ████████████

relied upon by BlackBerry's engineering and recordkeeping personnel.  For example,

BlackBerry uses ██████████████████████ to track what files are included in

each software build for a BlackBerry device.[39] ██████████████████████ file

iterations and versioning, allowing a user to assess when a file changed, what those changes

were, and who made the changes.[40] ████████████████ the integrity and traceability

of code in multiuser environments like BlackBerry, and built-in features such as branching

and "diffing" enable efficient evaluation of changes within a code base.[41]  Not surprising,

---

[36] McNall Decl. ¶ 13.

[37] McNall Decl. ¶ 13.

[38] Ex. 14.

[39] 6/20/13 Narayanan Dep. Tr. at 173:8-175:8, 235:2-14 (Ex. 11).

[40] 6/6/13 Drozdyuk Dep. Tr. at 184:4-18 (Ex. 15) ██████████████████████████

██████████████████") (discussing how a bug would be investigated); 6/18/13 Montemurro
Dep. Tr. at 244:20-246:3 (Ex. 29) ("████████████████████████████████████

████████████████████████████").

[41] Perforce "Managing Files and Changelists," *at*
http://www.perforce.com/perforce/doc.current/manuals/p4guide/04_files.html (Ex.16).

BlackBerry makes ample use of these common Perforce features — in fact, BlackBerry holds a Perforce world record for the highest change list number, and integrates its Perforce repository with bug control and tracking systems.[42]

Thus, in the ordinary course of BlackBerry's business, it a straightforward task to do two things that are of relevance here.  First, it is a simple task to tell, for a particular file of interest, which in the case of BlackBerry's business would be a bug, but here is infringement, which phones the file was included on.  Second, it is a simple task for BlackBerry to ascertain the changes in a particular file over time.

BlackBerry informed NXP that it would make the BlackBerry source code available via a client-server arrangement that linked a review computer to a Perforce repository server.[43]  Indeed, a substantial delay in producing the code was because Blackberry was allegedly building a Perforce repository for use by NXP in this case.[44]  However, BlackBerry did not comply with Rule 34(b)(2).

### 3.   BlackBerry Refused To Answer An Interrogatory Regarding Code Differences

In an effort to avoid suffering undue prejudice as a result of BlackBerry's delay in providing the source code as well as the form in which it was produced, NXP propounded interrogatory No. 12 to BlackBerry requesting identification of the differences in source code from one Accused Product to another:

Describe in detail any differences between the software builds released for use with each Accused Product in the United States, including:

---

[42] Perforce Versionary Awards 2013, *at* http://www.perforce.com/customers/versionaries-2013 (Ex. 17); Perforce, Why RIM Gives Perforce Extra Credit for Scalability, *at* http://www.perforce.com/blog/110606/why-rim-gives-perforce-extra-credit-scalability (Ex. 18).

[43] 4/5/13 Email from D. De Mory to T. Reger re: Discovery Issues at 6 (Ex. 10).

[44] *Id.*

    a)  An identification of each build, its release date, and the Accused Product(s) for which each build was released;

    b)  A detailed description of any difference(s) in features, functionality, or operation between each software build that are potentially relevant to any infringement (or non-infringement) analysis of each Asserted Claim and why such difference(s) are relevance.[45]

BlackBerry refused to explain any relevant difference concerning the functionality or operation of the BlackBerry code, responding that "the burden on NXP to derive or ascertain the answer to this interrogatory will be substantially the same as that of RIM."[46] BlackBerry's claim is both illogical and untrue – BlackBerry knows far more about the functionality of its source code than does NXP. Moreover, BlackBerry made it impossible for NXP's expert to ascertain the answer to the interrogatory by purposefully withholding change logs and version information detailed above. The information responsive to Interrogatory No. 12 – the difference in functionality or operation of the source code between the Accused Products – was, at all times, within BlackBerry's possession and was never disclosed nor timely made available to NXP.

    **4.    BlackBerry Should Not Be Allowed To Argue Differences It Made Impossible To Analyze**

BlackBerry's Rule 26 Initial Disclosures cannot be found to indicate that BlackBerry intended to rely on source code in view of its position that NXP's similarly-worded document requests did not request source code. Moreover, BlackBerry has impeded NXP's ability to review the source code generally, but more specifically to determine changes in files from version to version. If BlackBerry had produced its code as it was kept in the ordinary course of business, this would have been a ministerial task – literally using revision

---

[45] *See* 6/24/13 RIM's Objections and Responses to NXP's Third Set of Interrogatories (Ex. 19).
[46] *See Id.*

control aspects of Perforce.  But BlackBerry did not do so, obfuscating version numbers until days before NXP's expert reports were due, thus preventing NXP from performing this comparison.  Finally, when all else failed, NXP asked BlackBerry for the revision information as to any accused features.  BlackBerry refused to provide it.  Having taken each of these steps to prevent NXP from easily determining how files changed over time, BlackBerry's experts cannot now argue that NXP should have done more to determine whether there were differences between the code over time.  Ironically, because of the way in which BlackBerry produced its source code, BlackBerry's experts were only able to learn about such changes by interviewing BlackBerry employees, who, as detailed below, were also not identified to NXP during discovery.

As this Court has held, "[i]t is not appropriate to seek an advantage in the litigation by failing to cooperate in the identification of basic evidence."[47]  Whereas here, a party has repeatedly failed to comply with its disclosure and discovery obligations, courts routinely preclude that party from later relying on evidence that it otherwise should have disclosed or produced.[48]  Thus, NXP requests that the Court preclude BlackBerry from arguing, insinuating or otherwise introducing evidence that NXP's expert witnesses' analysis of BlackBerry's source code does not apply equally to every BlackBerry accused product.

---

[47] *In re Seroquel Prods. Liabl. Litig.*, 244 F.R.D. 650, 660 (M.D. Fla. 2007).

[48] *See* Fed. R. Civ. P. 37; *see also, e.g. Kona Spring Water Distrib. v. World Triathlon Corp.*, Case No. 8:05-cv-119-T-23TBM, 2007 WL 737624 (M.D. Fla. Mar. 7, 2007) (prohibiting use of certain documents for any purpose in the litigation where party failed to timely produce said documents); Order re the Report and Recommendation of Thomas b. McCoun III, *Axiom Worldwide, Inc. v. HTRD Group H.K. Ltd.*, Case No. 8:11-cv-1468-T-33TBM (M.D. Fla. May 15, 2013), ECF No. 287 (parties failing to comply with discovery obligations may not rely on any matters apart from that which they produced in discovery); *Juniper Networks, Inc. v. Toshiba Am., Inc.*, No. 2:05-cv-479, 2007 WL 2021776 (E.D. Tex. July 11, 2007).

### B.     BlackBerry's Experts Should Be Precluded From Relying On Conversations With Employees Not Disclosed In Rule 26 Disclosures

Next, the Court should preclude any argument or evidence stemming from conversations with individuals that BlackBerry failed to timely disclose in its Rule 26(a)(1) Disclosures, identify in responses to interrogatories, or designate as corporate designees for NXP's Rule 30(b)(6) topics.  Since the outset of this litigation, BlackBerry has been aware of NXP's contention that its Maps and Facebook applications were infringing the Patents-in-Suit.  Indeed, NXP detailed the infringing nature of those applications in its pre-suit claim charts that were provided to BlackBerry[49] and again in NXP's infringement contentions.[50] BlackBerry now – at the eleventh hour – seeks to improperly introduce as evidence communications between its rebuttal expert witness, Dr. Michalson, and several individuals whom BlackBerry has long known to possess discoverable information about the Maps and Facebook applications ("Undisclosed Individuals").[51] But BlackBerry never disclosed any of the Undisclosed Individuals and cannot now rely on them to the unfair detriment of NXP.

First, on August 1, 2012, BlackBerry served its Rule 26(a)(1) Disclosures, which identified over 45 individuals likely to have discoverable information.[52]  None of the Undisclosed Individuals were identified in these initial Rule 26(a)(1) Disclosures.[53]  On July 12, 2013, nearly a year after serving its Rule 26(a)(1) Disclosures, BlackBerry served its First Supplemental Rule 26(a)(1) Disclosures, which amended its Rule 26(a)(1) Disclosures to

---

[49] Claim Chart for U.S. Pat. No. 6,501,420 (Ex. 3).

[50] 5/20/13 NXP's Amended Resps. & Objs. To Defs.' First Set of Interrogatories (No. 1) and Exhibit 3 attached thereto (Ex. 32).

[51] The Undisclosed Individuals include Jonathan Ball (Michalson Rebuttal Report ¶¶ 55, 58,83, 119) (Ex. 1), Rob Watt (*Id.* ¶¶ 94, fn. 28, fn. 29, 129, 130, fn. 31), Jay Glanville (Id. ¶¶ fn 28, fn. 29), Erin Rahnenfuehrer (*Id.* ¶¶ 140, 143, 149), Sean Hungerford (*Id.* ¶ 61), TeleCommunication Systems Inc. (*Id.* ¶¶ 129, 941), Xtreme Labs, Inc. (*Id.* ¶¶ 50, 83), and Bitheads Inc. (*Id.* ¶¶ 140, 149).

[52] *See* 8/1/12 RIMS' Initial Rule 26(a)(1) Disclosures (Ex. 4).

[53] *See id.*

identify over 100 individuals likely to have discoverable information.[54]  Notwithstanding the addition of over 60 individuals likely to have discoverable information, BlackBerry failed to identify even a single one of the Undisclosed Individuals.[55]

Second, in August 2012, NXP served BlackBerry with an interrogatory requesting that BlackBerry "[i]dentify the three (3) most knowledgeable people who participated in the design or development of each of the Accusing Products, including the selection or incorporation of the Components . . . ."[56]  BlackBerry failed to identify the Undisclosed Individuals in any of its responses to NXP's interrogatory; BlackBerry simply directed NXP to its initial and supplemental Rule 26(a)(1) Disclosures.[57]

Third, in March 2013, NXP served BlackBerry with its Rule 30(b)(6) deposition notice, which included numerous topics related to, among others, the development, testing, operability, functionality and use of the Accused Products, which encompasses Maps and Facebook applications as explained above.[58]  BlackBerry did not identify any of the Undisclosed Individuals as designees.[59]  Moreover, when the BlackBerry 30(b)(6) designees were asked under oath to describe what they did, or identify the individuals with whom they met, in preparation for their depositions, neither BlackBerry designee stated they communicated with any of the Undisclosed Individuals.[60]

---

[54] *See* 7/12/13 RIM's First Supplemental Rule 26(a)(1) Disclosures (Ex.6).

[55] *See id.*

[56] *See* 8/30/13 RIM's Sixth Suppl. Obj. and Resp. to Plaintiff's First Set of Interrogatories (Ex. 20).

[57] *Id.*; 9/24/12 RIM's Obj. and Resp. to NXP's First Set of Interrogatories (Ex. 21).

[58] *See* 3/29/13 NXP's Notice of Rule 30(b)(6) Deposition to RIM (Ex. 23).

[59] *See* 5/10/13 RIM's Response to NXP's 30(b)(6) Notice (Ex. 24).

[60] 6/6/13 Drozdyuk Dep. Tr. at 8:17-9:24 (Ex. 15); 6/20/2013 Narayanan Dep. Tr. at 23:8-29:22 (Ex. 11).

BlackBerry's failure to timely disclose[61] means that the Court should exclude evidence stemming from the Undisclosed Individuals unless BlackBerry establishes that its failure to disclose was substantially justified or harmless.[62]  The party "failing to comply with Rule 26 bears the burden of showing that its actions were substantially justified or harmless."[63]  BlackBerry cannot justify its failure to identify the Undisclosed Individuals earlier.  BlackBerry knew at the outset of this litigation that its Maps and Facebook applications were accused of infringement and that the Undisclosed Individuals, who consist of BlackBerry employees and BlackBerry's third-party developers, were likely to have discoverable information.  BlackBerry should and could have supplemented its Rule 26(a)(1) Disclosures, responses to interrogatories and response to NXP's 30(b)(6) deposition notice to include the Undisclosed Individuals, but it chose not to do so to gain a tactical advantage.  Neither can BlackBerry establish that its failure to disclose was harmless.  BlackBerry identified evidence in the form of reliance on the Undisclosed Individuals – *for the first time* – in the rebuttal expert report of Mr. Michalson – *well after NXP had committed to its infringement theories* and *just one week before* the close of discovery.  As a result of BlackBerry's late disclosure, NXP was unfairly deprived the opportunity to depose the Undisclosed Individuals and conduct further written discovery to hone its infringement theories or probe BlackBerry's defenses in this action.  NXP has been prejudiced by BlackBerry's late disclosure.[64]

---

[61] Blackberry will argue that "NXP previously argued, and the Court agreed, that disclosures in expert reports during discovery satisfy Rule 26(e)'s supplementation requirements" to justify its late-disclosure of fact witnesses in its rebuttal expert reports.  *See* 9/13/13 Letter from N.Graubart to De. De Mory (Ex. 25). Blackberry is incorrect.  NXP argued that its infringement theories and claims previously set forth in interrogatory responses that had evolved based on discovery could be disclosed in initial expert reports.

[62] *See* Fed. R. Civ. P. 37(c)(1).

[63] *Murdick v. Catalina Marketing Corp.*, 496 F. Supp. 2d 1337, 1345 (M.D. Fla. 2007).

[64] BlackBerry may contend that there is not prejudice because "NXP could have sought the depositions of any of [the Undisclosed Individuals]," (*see* 9/13/13 Letter from N. Graubart to D. De Mory re Expert Reports (Ex.

## C.    BlackBerry Should Be Precluded From Offering Printed Publication Evidence Not Disclosed In Expert Reports Or Produced In Discovery

Dr. Chris Heegard should be limited to the information that he relied on in his expert report regarding whether certain prior art references satisfy the "printed publication" requirement. NXP requests that Dr. Heegard be precluded from testifying on information that was available to him when preparing his report but which he did not include it.

BlackBerry served its Invalidity Report on July 17, 2013. In the Invalidity Report, Dr. Heegard provided his expert opinions regarding how certain prior art references allegedly invalidate the '455 Patent. The analyzed alleged prior art include "The QoS Baseline Proposal – revision 2" by Michael Fischer (the "Fischer Reference"); "Slides to Assist with non-19 Comments by Terry Cole (the "Cole Reference"); and "Transmitter Power Control (TPC) and Dynamic Frequency Selection (DFS) Joint Proposal for 802.11h WLAN" by Sunghyun Choi (the "Choi Reference"). For each of the Fischer, Cole, and Choi References, to support his burden to show that they satisfy the "printed publication" requirement, Dr. Heegard relied only on the availability of these references on an IEEE website.

On October 16, 2003, BlackBerry provided Dr. Heegard with new information at this deposition that was not previously produced in discovery in support of the claim that the Fischer and Choi references meet the "printed publication" requirement for prior art. Dr. Heegard testified that the Fischer and Choi references were distributed to people who attended the IEEE meetings.[65]

---

25)). But, this case is well on its way to trial in March 2014; discovery closed on August 30, 2013 and the deadline for dispositive motion, *Daubert* motions and *Markman* briefs was October 28, 2013. Clearly, Blackberry's assertion that NXP could avoid prejudice by deposing several Undisclosed Individuals at the close of discovery and after it had committed to its infringement theories is without merit.

[65] *See, e.g.,* 10/16/13 Heegard Dep. Tr. at 115:8-20, 118:6-120:2, 122:9-124:5, 176:5-177:3, 190:18-193:18 (Ex. 26).

Dr. Heegard could and should have been aware of these alleged additional bases for the "printed publication" requirement at the time he submitted his Invalidity Report. Dr. Heegard refers to alleged events that happened years ago and that he should have been aware of at the time he wrote his expert report. Dr. Heegard attended numerous IEEE meetings and his opinion with respect to the alleged distribution at the IEEE meetings certainly could have been disclosed in his Invalidity Report. Dr. Heegard should not be allowed to introduce new evidence three months after his Invalidity Report and six weeks after the close of discovery.

Moreover, NXP will be prejudiced if BlackBerry is allowed to rely on this late-disclosed information. The discovery deadline passed on August 30, 2013. Moreover, NXP's expert, Dr. Alon Konchitsky, did not have an opportunity to address this new evidence in his rebuttal to the Invalidity Report, which was served on August 23, 2013.

Accordingly, because BlackBerry failed to timely disclose its intended reliance on Messrs. Fischer, Cole and Choi as required by Rules 26(a) and (e), NXP requests that BlackBerry be precluded from relying on Dr. Heegard's deposition testimony regarding the alleged distribution of the Fischer and Choi references in support of its assertion that the Fischer, Cole, and Choi references satisfy the "printed publication" requirement.

### D.    BlackBerry Should Be Precluded From Relying On Conversations With Michael Fischer And Matthew Shoemake

NXP requests that BlackBerry not be allowed to rely on conversations its expert Dr. Chris Heegard had with Michael Fischer and Matthew Shoemake. The timing and quantity of individuals disclosed by BlackBerry in its initial and Supplemental Rule 26(a)(1) disclosures is detailed above. BlackBerry did not disclose Messrs. Fischer and Shoemake as witnesses who may have discoverable information in its initial disclosures. Instead, just five days before submitting Dr. Chris Heegard's Expert Report Regarding Invalidity of U.S. Patent No. 7,330,455, BlackBerry served its First Supplemental Rule 26(a)(1) Disclosures,

listing an additional 59 witnesses as people who may have knowledge of discoverable information, two of whom were Messrs. Fischer and Shoemake. Dr. Heegard relies heavily on his conversations with Messrs. Fischer and Shoemake in supporting his invalidity opinions, as described in more detail with respect to the prior motion *in limine*. BlackBerry should not be able to benefit from its ambush tactic that has prejudiced NXP.

### E.    BlackBerry Should Be Precluded From Offering Any Defense Based On RAND/FRAND Obligations

NXP anticipates that BlackBerry will attempt to assert affirmative defenses based on claims that NXP failed to license the patents-in-suit under reasonable and non-discriminatory ("RAND") or fair, reasonable, and non-discriminatory ("FRAND") terms. BlackBerry should not be allowed to assert any such defenses because they were never asserted in either its answer or expert reports, and so should be limited to the defenses it has disclosed to NXP.

In Defendants' First Amended Answer, Affirmative Defenses, and Counterclaims to Plaintiff's Amended Complaint and Demand for Jury Trial, filed on March 28, 2013 ("Amended Answer"), BlackBerry did not plead any affirmative defense that remedies in this case should be limited based on any alleged failure by NXP to license its patents under RAND/FRAND terms.[66] BlackBerry has not further amended its answer to add any such defense. Accordingly, BlackBerry has waived this defense.[67]

Additionally, in the Rebuttal Expert Report of Keith R. Ugone, Ph.D., no defense based on a failure to by NXP to offer any of the patents-in-suit under RAND/FRAND terms was asserted.[68] Despite the fact that Dr. Ugone repeatedly discusses RAND/FRAND

---

[66] *See* 3/28/13 Defs.' First Amended Answer, Affirmative Defenses & Counterclaims to Pltfs' Amended Complaint (Doc. No. 98).

[67] *See, e.g., Haught v. U.S. Eng'g Contractors Corp., Haught v. U.S. Eng'g Contrs Corp.*, No. 07-80436-CIV, 2009 WL 36591, at *1-2 (affirmative defense waived by failing to plead).

[68] The Ugone Rebuttal Report was a rebuttal to the July 17, 2013 Expert Report of Roy Weinstein ("Weinstein Report") on damages.

licensing issues throughout his Report,[69] he never makes any claims that NXP failed to meet any RAND/FRAND obligations for the patents-in-suit. Dr. Ugone discusses RAND/FRAND licensing only in the context of determining the appropriate royalty rate for the patents-in-suit and the damages in this suit; not as a defense otherwise limiting NXP's damages in this case.

NXP would be highly prejudiced if BlackBerry were allowed at this late stage to assert such a defense. Discovery has been closed for months and NXP would be highly prejudiced in countering this defense should BlackBerry be allowed to assert it. Because BlackBerry has not asserted in either its Amended Answer or the Ugone Report any defenses based on claims that NXP failed to license the patents-in-suit under RAND/FRAND licensing terms, it should be precluded from making any such claims at trial.

### F.    BlackBerry Should Be Precluded From Offering Any Testimony, Including Expert Testimony, Outside the Scope of Testimony Given In Its 30(b)(6) Depositions

BlackBerry should be limited to offering testimony and opinions that are consistent with the scope of information on which its Rule 30(b)(6) corporate designees were prepared to testify. BlackBerry's corporate designees could not answer many questions on their designated topics, including basic ones regarding BlackBerry's adoption, testing, or implementation of the relevant functionality (or even the models that included a particular feature such as WiFi). Because BlackBerry had a duty under Rule 30(b)(6) to adequately prepare its designees concerning the noticed subject matter, and failed in its obligations, BlackBerry should be precluded from offering testimony at trial — whether through fact or expert witnesses — on subject matter that its witnesses claimed not to know at deposition.[70]

---

[69] *See* Ugone Rebuttal Report ¶¶ 6, 7, 14, 18, 47, 71, 72, 76, 83, 84, 100, 106, and 107 (Ex. 27).

[70] *E.g.*, *Alexander v. FBI*, 186 F.R.D. 148, 151-152 (D.D.C. 1999) ("Obviously, the purpose of a Rule 30(b)(6) deposition is to get answers on the subject matter described with reasonable particularity by the noticing party, not to simply get answers limited to what the deponent happens to know."); *Ierardi v. Lorillard, Inc.*, Civ. A. No. 90-7049, 1991 WL 158911, at *3 (E.D. Pa. Aug. 13, 1991).

For example, on issues related to BlackBerry's implementation of GPS functionality and power-related features, BlackBerry designated two individuals, Messrs. George Drozdyuk and Mahesh Narayanan, dividing the noticed topics based upon the manufacturer of the GPS chip included in the '420 Accused Products.[71] But these designees' job duties in no way encompassed the scope of the noticed topics, and neither was adequately prepared, even as to the general architecture, design, and development:



And although the deposition notice specifically requested corporate testimony concerning the power-related features, BlackBerry's designees were not suitably prepared:[74]



---

[71] *See* 3/29/13 NXP's First Notice of Deposition to RIM Pursuant to Rule 30(b)(6) (Ex. 23). Messrs. Drozdyuk and Narayan were designed on Topics 2, 3, 9, 15, 34-35. 6/3/13 Email from Graubart to De Mory (Ex. 28).

[72] 6/6/13 Drozdyuk Dep. Tr. at 37:10-23 (objections omitted) (Ex. 15).

[73] *Id.* at 245:14-23; *see also id.* at 88:10-23.

[74] *See* 3/29/13 NXP's First Notice of Deposition to RIM Pursuant to Rule 30(b)(6), Topic No. 9 ("The development, testing, operability, and use of power saving features or strategies related to global positioning system (GPS) functionality . . . (including, without limitation, activation, powering up, going hot, or similar in response to user input, websites, or applications).") (Ex. 23).



BlackBerry's designees also lacked knowledge regarding whether the GPS chips included in the accused products transitioned between power states, or whether the BlackBerry software (source code for example) even indirectly caused a change between the power modes documented by the chip manufacturers:



Mr. Narayanan expressly stated that nobody would have corporate knowledge concerning ▮



---

[75] 6/6/13 Drozdyuk Dep. Tr. at 42:7-9 (Ex. 15); *see also id.* at 219:10-25; 6/20/2013 Narayanan Dep. Tr. at 244:3-246:10 (Ex. 11).

[76] 6/6/13 Drozdyuk Dep. Tr. at 52:10-24 (objections omitted) (Ex. 15); *see also id.* at 201:8-202:15 (cannot answer questions concerning power modes employed by SiRF GPS chip included in Accused Products); *id.* at 236:19-237:11.

[77] 6/20/13 Narayanan Dep. Tr. at 240:21-241:2 (Ex. 11); *see also* 6/6/13 Drozdyuk Dep. Tr. at 203:10-204:10 ▮▮▮▮▮ (Ex. 15); *id.* at 206:11-22, 212:13-123:7.

[78] 6/20/23 Narayanan Dep. Tr. at 241:3-242:12 (Ex. 11).

Likewise, Mr. Narayanan had only limited knowledge concerning the operation of the BlackBerry Maps and Facebook features identified in NXP's infringement contentions.  That knowledge was limited to reciting how the selection of the Places feature would affect his particular and limited area of responsibility:



[79]

In view of these designees' lack of knowledge on the noticed subject matter, BlackBerry should be precluded from introducing testimony on these subjects at trial, including through introduction of such information through its expert witnesses.

These failings were not limited to the subject matter of a single asserted patent. BlackBerry's designee concerning the technical subject matter of the '455 Patent, Mr. Michael Montemurro, testified to a lack of corporate knowledge on an array of subject matter.[80]  NXP contends that the '455 Patent claims features related to the 802.11g wireless standard.  Mr. Montemurro, however, repeatedly testified that BlackBerry lacked any corporate knowledge concerning the '455 Accused Products' compliance with that standard, even though the Accused Products are advertised as including such technology:



---

[79] *Id.* at 257:3-258:15.

[80] Mr. Montemurro was designated on Topic Nos. 2, 3, 8, 11, 15, 24, 34, and 35.  6/13/13 Email from N. Graubart to D. De Mory (Ex. 28)' 3/29/13 NXP's First 30(b)(6) Notice to RIM (Ex. 23).



As a result, BlackBerry should be precluded from introducing testimony concerning whether (or not) its products comply with the 802.11 standards.[82]

And although Mr. Montemurro was designated on topics including the general architecture and development of the WiFi features in the BlackBerry phones, he was



.[83]

Although a witness under Rule 30(b)(6) is expected to make necessary inquiries to ensure adequate preparation, it is apparent that BlackBerry did not comply with the Rule's requirements.   Mr. Montemurro could not have adequately prepared considering that he did not even know about the noticed topics until the day before his deposition:



---

[81] 6/18/13 Montemurro Dep. Tr. at 25:11-26:14 (Ex. 29); *see also id.* at 30:24-31:18, 142:16-143:25.  This was true even inf view of product requirement documents from wireless carriers stating that compliance with the IEEE standards was a requirement.  *Id.* at 192:23-194:6, 230:15-231:12.

[82] Mr. Montemurro was likewise instructed not to answer questions concerning factual bases for non-infringement positions. *Id.* at 299:3-300:8.

[83] *Id.* at 96:5-19; *see also id.* at 99:20-101:11.

Accordingly, NXP requests that the Court limit BlackBerry to the testimony of its 30(b)(6) designees.[85]  BlackBerry should not be allowed to benefit at trial by introducing testimony concerning subject matter on which its designees were unprepared.  NXP will be prejudiced by BlackBerry introducing information for the first time at trial when it professed an inability to provide similar information during discovery, or by allowing its expert witnesses to offer opinions that rely on corporate knowledge that was not disclosed.

In addition, based on opinions proffered in its experts' reports, it appears that BlackBerry intends to rely on factual information obtained from employees concerning non-infringement positions, differences in operation between particular implementations, or approaches that fall outside the gamut of infringement.  But, during depositions, BlackBerry took the position that even such *factual* information was privileged, and instructed its witnesses not to answer questions on non-infringement or non-infringing alternatives.[86] BlackBerry should therefore be barred from offering such testimony at trial, whether through fact witnesses, or its experts' reliance on information obtained from BlackBerry personnel.

### G.    BlackBerry Should Be Precluded From Making Any Reference To The Pending *Inter Partes* Review Proceedings

NXP anticipates that BlackBerry will attempt to introduce evidence or argument related to the pending *inter partes* review proceedings that it initiated with respect to the 5,639,697 and 6,501,420 patents ("'697 Patent" and "'420 Patent" respectively). Specifically, BlackBerry is likely to use the proceedings as an improper vehicle to challenge the validity of the '697 and '420 patents at trial, despite the fact that no decision has issued in

---

[84] *Id.* at 128:22 – 129:5.

[85] *See also, Turner Constr. Co. v. Nat'l Am. Ins. Co.*, No. C– 03– 1227 SBA, 2004 WL 6066675, at *10 (N.D. Cal. Sep. 20, 2004) (party representative limited at trial to the matters he testified at his 30(b)(6) deposition).

[86] 6/20/13 Narayanan Dep. Tr. at 95:11-104:5 (designee about '420 Patent) (Ex. 11); 6/27/13 J. Nawrot Dep. Tr. at 82:2-84:2, 239:5-241:19 ('654 Patent) (Ex. 30); 6/18/13 Montemurro Dep. Tr. at 299:3-300:8 (Ex. 29).

either review proceeding.  Briefing is not set to conclude until at least May 2014 – at least

two months after the March 2014 trial.[87]  Thus, any predictions by BlackBerry as to the

results of the *inter partes* reviews are purely speculative.  Additionally, reference to the

incomplete *inter partes* reviews would be highly prejudicial to NXP since those proceedings

involve a different standard of review and thus, the risk of confusion to the jury is alarmingly

high.[88]  Though evidence regarding *inter partes* review may be marginally probative, courts

routinely exclude it due to its highly prejudicial effect.[89]  Because evidence related to *inter

partes* review offers no probative value to this action and will prejudice NXP because of the

significant risk of jury confusion,[90] NXP respectfully requests that the Court exclude any

references or evidence related to the *inter partes* review of the '697 and '420 patents.

   **H.    BlackBerry Should Be Precluded From Offering Testimony Or
           Arguments About NXP's Motivation For Filing Suit**

   NXP anticipates that BlackBerry will argue or introduce evidence that NXP filed this

patent infringement action to purportedly retaliate ████████████████████████

███████████████████████████████████████████████ Even

assuming *arguendo* that such argument is true or that such evidence exists, NXP's motivation

---

[87] 9/30/13 Scheduling Order [RIM-NXP_00388921-926 at RIM-NXP_00388925] (Ex. 31).

[88] *See Belden Techs., Inc. v. Superior Essex Communs. LP*, 802 F. Supp. 2d 555, 560 (D. Del. 2011)
("Admitting evidence about the . . . patent's reexamination, the outcome of which is not binding on the court,
would have only served to confuse the jury and was ultimately far more prejudicial than probative."); *IA Labs
CA, LLC v. Nintendo Co.*, 857 F. Supp. 2d 550 (D. Md. 2012) (holding *inter partes* reexamination proceedings
had "'little relevance to the jury's independent deliberations on the factual issues underlying the question of
obviousness' and that 'risk of jury confusion is 'high'."); *Park W. Radiology v. Carecore Nat'l LLC*, 675 F.
Supp. 2d 314 (S.D.N.Y. 2009).

[89] *See, e.g. Transamerica Life Ins. v. Lincoln Nat'l Life Ins. Co.*, 597 F. Supp. 2d 897, 907 (N.D. Iowa 2009);
*see also, Callaway Golf Co. v. Acushnet Co.*, 576 F.3d 1331, 1343 (Fed. Cir. 2009); *Realtime Data, LLC v.
Packeteer, Inc.*, No. 6:08- cv-144-LED-JDL, (E.D. Tex. Dec. 30, 2009), ECF No. 805 at 3, citing *i4i v.
Microsoft Corp.*, No. 6:07cv113, 2009 WL 2449024, at *17 (E.D. Tex. Aug. 11, 2009).

[90] *See Callaway Golf*, 576 F.3d 1331, 1343 (Fed. Cir. 2009) (district court's exclusion of evidence concerning
the pending re-examination proceeding because "prejudicial nature … outweighed whatever marginal probative
or corrective value it might have had in this case" not an abuse of discretion.)

for filing the instant action bears no relevance and offers no probative value to this patent infringement action.[91]  Indeed, BlackBerry can point to no claim or defense in this case that would require an inquiry into NXP's motivation or state of mind.  Because NXP's motivation for filing this lawsuit is irrelevant and lacks any probative value, NXP respectfully requests, pursuant to F.R.E.402 and 403, that the Court preclude any argument or evidence related to NXP's state of mind in filing this lawsuit, including any reference or argument that NXP filed the instant action to retaliate against BlackBerry for its decision to purchase certain NFC chips from a different supplier.

## I.    BlackBerry Should Be Precluded From Making Any Reference To Its Current Financial Status

NXP anticipates that BlackBerry will attempt to introduce evidence or argument related to its decline in revenue and current poor financial condition in an attempt to gain undue sympathy from the jury.  In recent months, a significant number of media outlets have reported on BlackBerry's continuous and sharp decline in revenue and on a rumored purchase of the financially-troubled company.  Such evidence, however, bears no relevance and offers no probative value to this patent infringement action which centers on the alleged infringement of five U.S. patents by certain accused BlackBerry devices.  Courts have routinely rejected the admission of such evidence of wealth and financial condition on these precise grounds.[92]  Accordingly, NXP respectfully requests that the Court preclude any reference or evidence related to BlackBerry's wealth and financial condition.

---

[91] *See Haught*, 2009 WL 36591 (holding the nature of plaintiff's motivation for filing action was irrelevant); *Square D Co. v. Breakers Unlimited, Inc.*, No. 1: 07-cv-806-WTL-JMS, 2009 2009 WL 1625505, at *1  (S.D. Ind. June 4, 2009) (granting motion *in limine* on grounds that motion for bringing the lawsuit was irrelevant); *Allstate Ins. Co. v. Nassiri*, No. 2:08-cv-369 JCM (GWF), 2013 WL 2394116, at *5 (D. Nev. May 30, 2013).

[92] *See St. Cyr v. Flying J, Inc.*, No. 3:06-cv-13-J-33TEM, 2007 WL 2696791, at *2-3 (M.D. Fla. Sept. 12, 2007) (granting motion *in limine* barring references to defendant's size, net worth, revenues or finances); *Khan v. H&R Block E. Enters.*, No. 11-20217-CIV, 2011 WL 4715201, at *2 (S.D. Fla. Oct. 5, 2011); *Ramjeawan v. Bank of Am. Corp.*, No. 09-20963-CIV, 2010 WL 1645097, at *2 (S.D. Fla. Apr. 21, 2010).

### J.   BlackBerry Should Be Precluded From Making Any Reference To NXP As A Non Practicing Entity As To The Patents-in-Suit

NXP anticipates that BlackBerry may attempt to refer to NXP as a patent assertion entity a non-practicing entity with respect to the asserted patents, or refer to its relationship with a licensing agent, including relating to this case..  Any characterization of NXP as a non-practicing entity, or any other similar disparaging description, would offer no probative value because it does not assist the jury in determining whether BlackBerry infringes NXP's patents or the amount of damages that NXP would be entitled to.  Neither does it have any value in supporting BlackBerry's defenses or counterclaims.  Additionally, any such reference to NXP is highly prejudicial to NXP.  If the Court were to allow BlackBerry to refer to NXP as a patent assertion entity or a non-practicing entity regarding the asserted patents or using any other similar disparaging terminology, that reference would undoubtedly cast NXP in an unwarranted, negative light.  For the foregoing reasons, NXP respectfully requests, pursuant to Fed. R. Evid. 402 and 403, that the Court preclude BlackBerry from offering any evidence or argument or alluding to or insinuating in any way that NXP does not practice or sell products regarding the asserted patents in this action, or is a patent assertion entity, or its relationship with any licensing entity, on the grounds that such evidence is irrelevant, offers no probative value and would be unfairly prejudicial to NXP.[93]

---

[93] *See DNT, LLC v. Sprint Spectrum, LP*, Civil Action No. 3:09CV21, 2010 WL 582164, at *4 (E.D. Va. Feb. 11, 2010) (granting plaintiff's motion *in limine* as to the term "patent troll" because "the prejudicial impact outweighs any probative value").

Dated:  October 31, 2013                    Respectfully Submitted,


                                            _____/s/ Denise M.De Mory_____

                                                Denise M. De Mory

                                            Thomas A. Zehnder, Esq.
                                            Florida Bar No.: 0063274
                                            Taylor F. Ford, Esq.
                                            Florida Bar No. 0041008
                                            KING, BLACKWELL, ZEHNDER & WERMUTH P.A.
                                            P.O. Box 1631
                                            Orlando, FL 32802-1631
                                            Telephone:  (407) 422-2472
                                            Facsimile:  (407) 648-0161
                                            E-Mail:  tzehnder@kbzwlaw.com
                                            E-Mail:  tford@kbzwlaw.com


                                            Denise M. De Mory (Admitted *pro hac vice*)
                                            Matthew F. Greinert (Admitted *pro hac vice*)
                                            Aaron R. Hand (Admitted *pro hac vice*)
                                            Cliff Win (Admitted *pro hac vice*)
                                            BUNSOW, DE MORY, SMITH & ALLISON LLP
                                            55 Francisco Street, 6th Floor
                                            San Francisco, CA 94133
                                            Telephone:  (415) 426-4747
                                            Facsimile:  (415) 426-4744
                                            E-Mail:  ddemory@bdiplaw.com
                                            E-Mail:  mgreinert@bdiplaw.com
                                            E-Mail:  ahand@bdiplaw.com
                                            E-Mail:  cwin@bdiplaw.com


                                            **Counsel for Plaintiff NXP B.V.**

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on October 31, 2013, a copy of the foregoing was

electronically filed with the Clerk of the Court by using the CM/ECF system, which will send

a notice of electronic filing to all counsel of record who have registered to receive notices

from the Court under the CM/ECF system.

Dated:  October 31, 2013

*/s/ Denise M. De Mory*
_____

Denise M. De Mory