UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

NXP B.V.,

       Plaintiff,

v.                                                                                    Case No.  6:12-cv-498-Orl-22TBS

BLACKBERRY, LTD. and
BLACKBERRY, CORP.,

       Defendants.

_____/

ORDER

     This patent infringement case comes before the Court without oral argument on

Plaintiff NXP B.V.'s Amended Motion for Rule 37 Relief. (Doc. 186).  Plaintiff alleges

that Defendants have failed to produce, or have waited too long to produce, key

documents its damage expert Roy Weinstein needs to fully evaluate the Georgia-

Pacific[1] factors and assess Plaintiff's reasonable royalty patent damages.  (Id., p. 18).

Defendants deny Plaintiff's allegations and argue that the motion is a veiled attempt to

shield Mr. Weinstein from Defendants' pending Daubert[2] motion which seeks to

---

[1] In Georgia-Pacific Corp. v. United States Plywood Corp., 318 F.Supp. 1116 (S.D.N.Y. 1970) modified 446 F.2d 295 (2d Cir. 1970) cert. denied 404 U.S. 870 (1971), the Federal Circuit said to properly calculate patent infringement damages, a reasonable royalty for the infringing technology must first be determined using the framework it endorsed.  This framework provides for the evaluation of certain factors in the context of a "hypothetical negotiation" in which the trier of fact must determine what a willing licensee and licensor would have agreed was the value of the patents on the date when infringement first occurred.  One of the Georgia-Pacific factors is the value of the patented features, which can be evidenced by the value to the company incorporating the feature, consumer demand, and other assessments of value.

[2] Daubert v. Merrell Dow Pharms., Inc., 509 U.S. 579 (1993), holds that Rule 702 of the Federal Rules of Evidence, not the Frye standard governs the admissibility of expert scientific testimony in federal court.  Under Daubert, the party offering expert testimony must show by a preponderance of the evidence that: (1) the expert is qualified to testify competently regarding the matters he speaks about; (2) the expert's methodology is sufficiently reliable; and (3) the testimony will assist the trier of fact to understand the evidence or determine a fact in issue.

partially exclude his opinions.  (Doc. 203).  The motion is due to be denied.

BACKGROUND

Plaintiff's complaint alleges that the following features ("Features") of Defendants' products infringe its patents: eMMC memory, high speed WiFi, GPS supported functionality, and battery life.  (Doc. 1).  On August 14, 2012, Plaintiff propounded its first requests for production to Defendants.  (Doc. 186-2).  The requests included categories of documents intended to reveal the incorporation of the Features into Defendants' products and the qualitative and quantitative value Defendants afforded the Features on the dates of first infringement.  (Doc. 186, p. 2). Believing that it would not be necessary, and to avoid undue burden and expense, the parties agreed not to request email discovery except under limited circumstances. (Id.).  Based on this agreement, Plaintiff's requests did not include email.  (Doc. 220, p. 9).

Plaintiff was not satisfied with Defendants' response to its document requests and after numerous meet and confers, filed a motion to compel on July 5, 2013.  (Doc. 110).  While the motion to compel was pending, Plaintiff served Mr. Weinstein's report on damages, based upon the information then available, in accord with the case management schedule.  (Id., p. 3-4).  In early August, 2013 Plaintiff, still believing that Defendants had failed to meaningfully participate in damages discovery, requested email from Defendants.  (Doc. 186, p. 2).  Defendants in turn, requested email discovery from Plaintiff.  (Id.).

---

Rink v. Cheminova, Inc., 400 F.3d 1286, 1291-92 (11th Cir. 2005) (citations omitted).

The motion to compel was argued on August 16, 2013 and the Court announced its decision (the "Discovery Order") on August 21, 2013.  (Docs. 147, 157). On requests for production 7 and 15-17 (the "Requests") the Court ruled as follows:

Request No. 7: All documents and things, including but not limited to technical and marketing studies and minutes of meetings, that relate or refer to RIM's decision to commence developing, designing, testing, manufacturing, offering for sale, selling or importing the Accused Products.

Ruling: Number seven, the  motion is granted to the extent the information is not privileged and concerns defendants' decision to commence developing, designing, testing, manufacturing, and offering for sale, selling or importing the components or the functions the components offer or make possible.

Request No. 15: All documents and things that disclose, refer, or relate to RIM's decision, process, and reasons to modify the design of its products in order to include or incorporate embedded MultiMediaCard (eMMC) storage technology or devices.

Ruling: Number 15, the motion is granted to the extent the information is not privileged.

Request No. 16: All documents and things that disclose, refer, or relate to RIM's decision, process, and reasons to modify the design of its products in order to include or incorporate 802.11b/g, 802.11b/g, or 802.11a/b/g/n wireless technology.

Ruling: Number 16, the motion is granted to the extent the information is not privileged.

Request No. 17: All documents and things that disclose, refer, or relate to RIM's decision, process, and reasons to modify the design of its products in order to include or incorporate Global Positioning System (GPS) technology, including GPS technology with variable power states.

Ruling: Number 17, the motion is granted to the extent the information is privileged.

(Doc.157, p. 10).  In all other respects, Plaintiff's motion to compel the Requests was denied.  (Id.).

After the Court entered the Discovery Order, the parties agreed that Mr. Weinstein could supplement his report after receiving additional documents from Defendants.  (Doc. 186, p. 2).  The parties also agreed their damage experts would be deposed after that.  (Id.).  Plaintiff repeatedly asked Defendants for a date by which all responsive documents would be produced and Defendants repeatedly assured Plaintiff that documents would be forthcoming while refusing to commit to a date by which their production would be complete.  (Id., p. 5-6).  When Plaintiff continued to press Defendants for a date they responded that they had already produced a substantial number of documents, they were continuing to search for documents, and they would produce additional documents promptly if identified.  (Id., p. 7).  Plaintiff is still not satisfied with Defendants' production, and has filed the pending motion alleging that Defendants have violated the Discovery Order.

Plaintiff complains that since it propounded its first requests for production it has been seeking documents relating to the incorporation of the Features into Defendants' handset platform.  (Id., p. 1, 3-4). Specifically, Plaintiff wants to know why the Features were added; what Defendants considered when deciding to add the Features; how much it cost to add the Features; the cost-benefit analysis in choosing one technology over another; and what value the Features added to Defendants' platform.  (Id., p. 10). Plaintiff argues that this information, some of which it says it still does not have, is central to Mr. Weinstein's Georgia Pacific damage analysis.  (Id.,

p.11-12, 22).  Based upon documents Defendants have produced, Plaintiff contends that this information does exist.  (Id., p. 11-17, 20).  It has maintained, for example, that Defendants must have conducted quantitative analyses, including financial reviews, before undertaking changes to their platform.  (Id., p. 2; Doc. 256, p. 2).  But it says, Defendants claimed no such documents could be located.  (Id.).  Plaintiff reports that through discovery, it has identified documents showing that Defendants did, in fact, conduct quantitative reviews as part of their product development process.  (Id., p. 2-3).  Plaintiff says these documents still have not been produced and demonstrate that Defendants did not conduct a diligent investigation or inquiry to identify and produce responsive documents. (Doc. 186, p. 10-11).

Plaintiff further maintains that since the Discovery Order was entered, excluding email, Defendants have only produced 240 documents consisting of product briefs, presentations, specification sheets on individual phones (98), a third-party data sheet (1), demand plans and sales summaries (101), other planning and technical documents (9), bills of materials, Inter Partes review materials and data sheets (18), and product and market requirement documents (13).  (Id., p. 7-8).  Defendants have conceded there are additional documents to be produced, they have not committed to a firm date to produce the documents, and they say that due to recent changes within the company, some documents may now be more difficult to locate.  (Id., p. 9; Doc. 220, FN 41).  Plaintiff argues that this production should not be an issue and that Defendants should have located their documents, custodians, and the repositories of responsive documents when the complaint was filed, or earlier

when Plaintiff furnished pre-suit notice including claims charts.  (Doc. 256, p. 3).

Defendants deny Plaintiff's allegations and have undertaken to affirmatively disprove them.  (Doc. 220). They address each of Plaintiff's questions about the Factors separately and identify specific documents which they claim, answer Plaintiff's questions.  (Id., p. 2, 11-19). Based upon these documents, most of which Defendants produced before the close of discovery, they contend that Plaintiff either failed to analyze their production or simply ignored the documents it found.  (Id., p. 11).

Defendants characterize Plaintiff's claim that they have only produced a few hundred documents as a "fabricated" issue manufactured by Plaintiff to make the number of documents produced appear artificially small.  (Id., p. 2).  Defendants note that Plaintiff's motion ignores almost 18,600 emails and attachments comprising over 30,000 pages they produced after the Court entered the Discovery Order.  (Id.).  They represent that these emails and attachments were identified using Plaintiff's approved search terms designed specifically to focus on the Requests.  (Id.).

Defendants also reject Plaintiff's allegations concerning the sufficiency of their efforts to comply with the Requests and Discovery Order.  (Id., p. 4). They represent that prior to the Discovery Order, their counsel interviewed at least forty potential document custodians to identify responsive documents.  (Id., p. 7-8).  This resulted in the identification and production of both paper and electronic documents.  (Id., p. 8). After the Discovery Order was entered, Defendants conducted additional interviews of custodians which led to the production of more documents.  (Id.).  Some of these additional documents were found in the possession of individual custodians, or

archived in not readily accessible network-based document repositories, and on the hard drives of former employees.  (Id.).  Defendants also conducted email searches that were broader than Plaintiff requested, and which resulted in the production of the over 30,000 pages of emails and attachments.  (Id.).  As Defendants locate documents, they continue to be produced on a rolling basis.  (Id., p. 11). While the production continues, some email has been delayed because Defendants are required to comply with contractual notice obligations where email attachments contain third-party confidential information.  (Doc. 259, p. 5).

By the time Plaintiff filed its reply, Defendants had produced at least 66,765 additional pages of documents.[3]  (Doc. 256, p. 1).  Plaintiff argues that this discovery is too little too late.  It notes that discovery and pre-trial deadlines have come and gone and says that Defendants' delay in producing responsive documents has foreclosed its ability to supplement Mr. Weinstein's expert report on damages.  (Id., p. 5).  Defendants' response to this claim relies on Plaintiff's argument at the August 16, 2013 hearing that Rule 26(e) requires parties to supplement their expert reports to account for new information received even after discovery and expert depositions are over, until the parties' Rule 26(a)(3) pretrial disclosures.  (Doc. 259, p. 5).

On October 28, 2013, Defendants filed their pending motion to partially exclude Mr. Weinstein's testimony.  (Doc. 203).  Plaintiff argues that after failing to produce documents, Defendants are now exploiting their own wrongdoing by attacking Mr. Weinstein's expert opinions based upon his failure to consider the very documents

---

[3]During this time period, Plaintiff produced almost the same number of documents to Defendants. (Doc. 259, p. 4-5).

they have not produced.  (Doc. 186, p. 21-23).  Plaintiff asserts that because Defendants failed to produce documents, the Court should preclude them from challenging the sufficiency of Mr. Weinstein's opinions, preclude them from challenging the materials and methodology he used, and preclude Defendants from otherwise calling into question the sufficiency of Mr. Weinstein's review and analysis of the documents they did produce.  Defendants counter that their Daubert motion is based on Mr. Weinstein's legally incorrect methodology which does not depend upon the quantity or quality of documents they have produced.  (Doc. 220, p. 3).  Plaintiff insists that the sufficiency and methodology of Mr. Weinstein's opinion cannot be separated.  (Doc. 256, p. 5).

Plaintiff's reply draws a distinction between Defendants' documents which contain qualitative information and Defendants' documents which contain quantitative information.  (Id., p. 1-2).  Plaintiff argues that the documents Defendants have produced establish that they have quantitative documents including underlying analyses and similar documents for the Features which have not been produced.  (Id., p. 2-3).  Defendants see this as a new argument, not made in Plaintiff's motion.  They assert that Plaintiff has shifted its focus from qualitative to quantitative documents.  Regardless, Defendants represent that they have produced quantitative documents which answer Plaintiff's questions.  (Doc. 259, p. 2).  In particular, they point to "Concept Summary" documents which they say, for new concepts, describe "Business Value" and the "Estimated Project Costs (excluding labor)" and "Resource Estimate (staff weeks)" as proof that they have provided their quantitative information.  (Id.).

And, they aver that they have produced both their actual and projected sales and cost

information for each of the accused products. (Id., p. 3).  As a result, Defendants

contend that Plaintiff has the quantitative data showing their actual and projected

sales, costs, and the benefits of selling the accused products that incorporate the

Features.  (Id.).  They also say most of these documents were produced before the

close of discovery.  (Id., p. 4-5).

LEGAL STANDARD

Federal Rule of Civil Procedure 37(b)(2)(A) provides that if a party "fails to obey

an order to provide or permit discovery . . . the court where the action is pending may

issue further just orders."  The sanctions for failure to comply with a discovery order

may include:

> (I) directing that the matters embraced in the order or other
> designated facts be taken as established for purposes of the action,
> as the prevailing party claims; (ii) prohibiting the disobedient party
> from supporting or opposing designated claims or defenses, or from
> introducing designated matters in evidence; (iii) striking pleadings in
> whole or in part . . .

FED. R. CIV. P. 37(b)(2)(A)(I)-(iii).

"Rule 37 sanctions are intended to prevent unfair prejudice to the litigants and

insure the integrity of the discovery process."  Gratton v. Great AM. Commc'ns, 178

F.3d 1373, 1374 (11'h Cir. 1999) (citation omitted).  "If it is established that [a party]

violated [the] Court's discovery Order, the issues become whether the violations were

substantially justified, the prejudice suffered by the Plaintiff, and the 'just' sanctions to

impose, if any."  Lockwood v. Shands Jacksonville Med. Center Inc., No. 3:09-cv-376-

J-20MCR, 2010 WL 2652469, at * 1 (M.D. Fla. July 1, 2010).  "Substantially justified

-9-

means that reasonable people could differ as to the appropriateness of the contested action." United States ex rel. Ragghiani Founds, III, LLC v. Peter R. Brown Const., No. 8:12-cv-942-T-33MAP, 2013 WL 5290108, at *3 (M.D. Fla. Sept. 19, 2013) (quoting Maddow v. Proctor & Gamble Co., Inc., 107 F.3d 846, 853 (11th Cir. 1997)). "[T]he Federal Rules of Civil Procedure do not require perfection or a guarantee that every possible responsive document has been found or produced.  When a party responds to discovery requests the Rules require only that a search for responsive materials be objectively reasonable."  Reinsdorf v. Skechers U.S.A., Inc., ___ F.R.D. ___, 2013 WL 3878685, at *26 (C.D. Cal. July 19, 2013).  "A party may avoid sanctions for noncompliance with an order if it made 'all reasonable efforts to comply with the court's order.'"  Int'l Brominated Solvents Ass'n v. Am. Conf. of Governmental Indus. Hygienists, No. 5:04-cv-394, 2008 WL 1805445, at *4 (M.D. Ga. April 18, 2008) (quoting BankAtlantic v. Blythe Eastman Paine Webber, Inc., 12 F.3d 1045, 1050 (11th Cir. 1994)).  A court should not "impose sanctions based on a party's vague assertion that more documents than those produced may exist."  Int'l Brominated Solvents Ass'n, 2008 WL 1805445, at *4.

ANALYSIS

Plaintiff's motion relies heavily on the decision in Volumetrics Med. Imaging, L.L.C. v. Toshiba Am. Med. Sys. Inc., No. 1:05cv955, 2011 WL 2600718 (M.D.N.C. June 29, 2011).  In Volumetrics, the defendant served interrogatories seeking claim charts on two of the patents-in-suit.  The plaintiff failed to respond and the defendant sought, and the Court issued, an order compelling the plaintiff to produce infringement

-10-

contention charts.  The plaintiff failed to provide the charts and the defendant moved for sanctions.  The court noted that pursuant to Rule 37 it had the authority to "sanction a party for failing to comply with a discovery order and such sanctions may include the preclusion of matters from evidence." Id. at *2.  The court said it could enter an order "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence." Id. (citing FED. R. CIV. P. 37(b)(2)(A)(ii)). The court held that plaintiff was not allowed to argue the issue of infringement as a "consequence of non-compliance" with its order. Id. at *9.  In its decision, the Court said "other types of sanctions, such as a monetary penalty and a further order to respond, would not suffice, but rather would tend to undermine the credibility of the Court . . . [n]or does the preclusion sanction represent an especially harsh penalty in this case." Id.

Here, the facts are not so clear cut as in Volumetrics.  The Court does not find wilfulness or bad faith on the part of Defendants.  As shown by the Court's ruling on Plaintiff's motion to compel, they were at fault for failing to produce all their documents when they should have been produced.  (Doc. 214).  Still, they raised legitimate discovery issues in response to the motion to compel.  Based on Defendants' representations, the Court is satisfied that they have taken seriously their duty of production, and that they have made a genuine effort to locate and produce documents to Plaintiff.

The time it has taken Defendants since the entry of the Discovery Order to make their production, and the fact that they have still not committed to an outside

date by which their production will be complete is troubling.  But, the evidence does not support a finding that since the Discovery Order was entered Defendants have been dilatory or that they have otherwise acted in bad faith.

While Plaintiff is adamant that Defendants still have not produced key documents Mr. Weinstein needs for his damage analysis, they also maintain that his "analysis is sound, and amply supported by the limited record that [Defendants] produced." (Doc. 256, p. 5).  Defendants have also demonstrated that they have produced documents which respond to all of Plaintiff's questions about the Features, posed in its motion for Rule 37 sanctions.

On the issue of motive, the Court is not persuaded that Defendants are wrongly attempting to profit from their failure to produce or to timely produce documents responsive to the Requests.  Defendants' Daubert motion alleges that Mr. Weinstein's opinions are flawed because: (1) a royalty rate he used is based upon an unreliable rule of thumb as opposed to being tied to the facts of the case; (2) some of his underlying assumptions are unsupported, outside his area of expertise, and contrary to the testimony of Plaintiff's technical expert; (3) one of his opinions is based upon an unscientific and unsupported conclusion; and (4) another of his opinions relies on non-comparable licenses.  (Doc. 203, p. 1-2).  While these arguments are not completely divorced from the sufficiency of Defendants' production, they deal almost entirely with Mr. Weinstein's methodology, and not with his inability to review additional documents.  As further proof that Defendant's motion focuses on Mr. Weinstein's methodology, it relies on the decisions of other courts which have rejected

-12-

his opinions based on the methodology he used.  See, Suffolk Techs. LLC v. AOL Inc., No. 1:12-cv-625, Dkt. No. 518 (E.D. Va., April 12, 2013); Virnetx Inc. v. Cisco Sys., Inc., No. 6:10-cv-417, 2013 WL 789288 (E.D. Tex. Mar.1, 2013); Versata Software Inc. v. SAP Am., Inc., No. 2:07-cv-153 CE, 2011 WL 4017939 (E.D. Tex. Sept. 9, 2011); Mformation Techs., Inc. v. Research In Motion Ltd., No. C 08-04990 JW, 2012 WL 1142537 (N.D. Cal. Mar 29, 2012).

ATTORNEY'S FEES

Defendants allege that Plaintiff's motion was "not well-grounded in fact" and was "submitted in bad faith and for an improper purpose."  Riccard v. Prduential Ins. Co., 307 F.3d 1277, 1293-94 (11th Cir. 2002).  On this ground, they seek an award of attorney's fees pursuant to FED. R. CIV. P. 11.  It should be sufficient to say the facts do not support Defendants' motion.

Now, it is ORDERED that:

(1) Plaintiff's NXP B.V.'s Amended Motion for Rule 37 Relief (Doc. 186), is DENIED; and

(2) Defendants' request for Rule 11 sanctions is DENIED.

DONE AND ORDERED in Orlando, Florida, on December 20, 2013.

THOMAS B. SMITH
United States Magistrate Judge

Copies to all Counsel